# Ogilvie's Estate.

*Insurance—War risk insurance—Soldiers—Acts of Congress of October 6, 1917, c. 105, Article IV, 40 Stat. 398; December 24, 1919, c. 16, sec. 131, 41 Stat. 371; June 7, 1924, c. 320, 43 Stat. 607, and March 4, 1925, c. 553, 43 Stat. 1302.*

1. Where a soldier, in November, 1917, took out a war-risk insurance certificate under the Act of Congress of October 6, 1917, 40 Stat. 398, the rights of the parties entitled to the balance of the fund in June, 1925, are not controlled alone by the Act of 1917, but as well by all subsequent legislation, including the Act of March 4, 1925, 43 Stat. 1302, which by its express terms is made effective as of October 6, 1917.

2. In such case, where the monthly installments were paid after the soldier's death to his father, the sole beneficiary named in the certificate, until the latter's death, the present value of the monthly installments thereafter payable, are properly awarded under the Act of March 4, 1925, to the executrix of the soldier's will.

3. Where the named beneficiary in the certificate dies after surviving the soldier, the unmatured installments become a part of the latter's estate as of the date of his death, although the time when they will actually be received and the amount thereof is uncertain.

4. The unmatured installments are distributable by the orphans' court as part of the soldier's estate.

*Statutes—Construction—Change of language—Conflict.*

5. Where the language of a later statute is different from that of an earlier one on the same subject, the changes of the language indicates a change of legislative intent.

6. Where statutes conflict the later governs.

Argued October 3, 1927. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 159 and 171, March T., 1927, by Margaret Joy Houston, executrix, and Emma A. Ogilvie, from decree of O. C. Butler Co., Sept. T., 1927, No. 77, dismissing exceptions to adjudication in estate of Lester W. Ogilvie, deceased. Reversed.

Exceptions to adjudication. Before HENNINGER, P. J. The opinion of the Supreme Court states the facts.

Exceptions dismissed. Margaret Joy Houston, executrix, and Emma A. Ogilvie appealed.

*Error assigned,* inter alia, was decree, quoting record.

*Benjamin R. Williams* and *Charles M. Donley,* for appellant, Margaret Joy Houston.

· *Theodore C. H. Keck,* for appellant, Emma A. Ogilvie.

*Thomas H. Greer,* with him *John B. Greer* and *William A. Jones, Jr.,* for appellees.

OPINION BY MR. JUSTICE WALLING, December 5, 1927:

In November, 1917, Lester W. Ogilvie, of Butler County, while a soldier in the World War, took out a war risk insurance certificate of $10,000, payable in two hundred and forty monthly installments of $57.50 each, naming his father, Frank S. Ogilvie, as beneficiary. The soldier died in August, 1918, testate, and the government paid the father the monthly installments until his death in September, 1920; thereafter the accruing installments were paid to Hannah Ogilvie, the soldier's grandmother, until her death in June, 1925. Later, in October, 1926, the appellant, Margaret Joy Houston, not a relative of the soldier, but alleged to have been his fiancee, had his last will, in which she was named as executrix and sole beneficiary, probated in Butler County and took out letters testamentary. The government paid the commuted value of the unpaid installments to

the executrix and her account shows a net balance thereof of $6,931.20, which she claimed as sole legatee. At the audit the fund was also claimed by Emma A. Ogilvie, stepmother of the soldier, under the will of her late husband, Frank S. Ogilvie; also by the soldier's aunt, two uncles and two cousins, as his next of kin. The orphans' court, by final decree, awarded it to the latter and Margaret Joy Houston and Emma A. Ogilvie have severally appealed. In our opinion the decree was error.

War risk insurance was largely a development of the World War. The first pertinent Act of Congress is that of October 6, 1917, c. 105, article IV, 40 Stat. 398, 409, which provides, inter alia, "The insurance shall be payable only to a spouse, child, grandchild, parent, brother, or sister or to any or all of them...... Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries, but only within the classes herein provided. If no beneficiary within the permitted class be designated by the insured, either in his lifetime or by his last will and testament, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons within the permitted class of beneficiaries as would under the laws of the State of the residence of the insured be entitled to his personal property in case of intestacy. If no such person survive the insured, then there shall be paid to the estate of the insured an amount equal to the reserve value, if any, of the insurance at the time of his death, calculated on the basis of the American Experience Table of Mortality and three and one-half per centum interest in full of all obligations under the contract of insurance." This was followed by the Act of Congress of December 24, 1919, c. 16, sec. 131, 41 Stat. 371, 375, which enlarged the permitted class of beneficiaries so as to include uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law. Then, in 1924, the entire act was revised and reënacted

in the World War Veterans Act of June 7, 1924, c. 320, 43 Stat. 607, 624, which retained the permitted class of beneficiaries, and provided (sec. 303) as follows: "If no person within the permitted class of beneficiaries survive the insured, or if before the completion of payments the beneficiary or beneficiaries shall die and there be no surviving persons within said permitted class, then there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable under the provisions of this title." This section was amended by sec. 14 of the Act of March 4, 1925, c. 553, 43 Stat. 1302, 1310, which reads as follows: "Sec. 303. If no person within the permitted class be designated as beneficiary for yearly renewable term insurance by the insured either in his lifetime or by his last will and testament or if the designated beneficiary does not survive the insured or survives the insured and dies prior to receiving all of the two hundred and forty installments or all such as are payable and applicable, there shall be paid to the estate of the insured the present value of the monthly installments thereafter payable, said value to be computed as of date of last payment made under any existing award: Provided, that all awards of yearly renewable term insurance which are in course of payment on the date of the approval of this act shall continue until the death of the person receiving such payments, or until he forfeits same under the provisions of this act. When any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid installments of the insurance so awarded to such person: Provided further, that no award of yearly renewable term insurance which has been made to the estate of a last surviving beneficiary shall be affected by this amendment: Provided further, that in cases when the estate of an insured would escheat under the laws of the place of his residence the insurance

shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917." The certificate issued to the soldier in the instant case stated: "This insurance is granted under the authority of the Act approved October 6, 1917, and subject in all respects to the provisions of such Act, of any amendments thereto and of all regulations thereunder now in force or hereafter adopted. All of which, together with the application for this insurance and the terms and conditions published under authority of the Act, shall constitute the contract." The application read, in part, as follows: "In case any beneficiary should die or become disqualified after becoming entitled to an installment but before receiving all installments the remaining installments are to be paid to such person or persons within the permitted class of beneficiaries as may be designated in my last will, or, in the absence of such will, as would under the laws of my place of residence be entitled to my personal property in case of intestacy." Certificates of this class are not gratuities from the government nor yet ordinary insurance policies, but partake somewhat of the nature of both. It was a venture undertaken for the protection of the soldier and his dependents, and the government might attach thereto such condition as deemed wise. Being untried it was thought that experience might show the necessity for modifications; hence the government expressly reserved the right to make them. When made they became a part of the original contract. In White v. United States, 270 U. S. 175, 70 Law. Ed. 530, it is held that an aunt was entitled to share as a beneficiary under the Act of 1919, although her designation as such and the insured's death were prior to the date of the Act. Justice HOLMES, speaking for the court, after quoting from the certificate, says: "These words must be taken to embrace changes in the law no less than changes in the regulations. The

form was established by the Director with the approval of the Secretary of the Treasury, and on the authority of article I, par. 1, and article IV, par. 402, of the act, which, we have no doubt, authorized it. The language is very broad and does not need precise discussion when the nature of the plan is remembered. The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it, and the relation of the government to them, if not paternal, was at least avuncular. It was a relation of benevolence established by the government at considerable cost to itself, for the soldier's good. It was a new experiment in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will. If the soldier was willing to put himself into the government's hands to that extent no one else could complain." Hence the rights of the parties in the instant case are not controlled alone by the Act of 1917, but as well by all subsequent legislation, including the Act of 1925, which by its express terms is made effective as of October 6, 1917. It is true that the appellant, Miss Houston, could claim nothing under the Act of 1917, or that of 1919, for the reason that she was not within the permitted class eligible for designation and the soldier in question left surviving relatives who were within the class. And because of such surviving relatives she can claim nothing under the Act of 1924. But the Act of 1925 makes a radical change, for thereunder the survival of a member or members of the permitted class affords no ground for not paying the present value of the monthly installments to the estate, unless such member or members are designated as beneficiary. Here not one of appellees was so designated. The sole named beneficiary was the father and upon his death under the plain language of the act the unmatured installments were payable to the soldier's estate. This precise question does not seem to have been passed upon by the

United States Supreme Court, but it has by numerous
state courts who, with practical unanimity, hold that
under the Act of 1925, in the absence of a named bene-
ficiary or upon his death, the unmatured installments
of insurance belong to the soldier's estate and are dis-
tributable as a part thereof. In the case of Palmer
v. Mitchell, Admr., etc., et al., the Supreme Court of
Ohio, in an opinion filed June 15, 1927 (not yet re-
ported), holds, inter alia, that, "Under section 303, of
the Act of Congress, approved March 4, 1925, if the
designated beneficiary survives the insured and dies
prior to receiving all the installments of insurance pay-
able, the present value of the insurance thereafter pay-
able must be paid to the estate of the insured soldier
and, in case of his intestacy, distributed according to
the law of descent and distribution in force at the date
of the soldier's death." Construing the Act of Congress
of March 4, 1925, above in part quoted, in case of Singer
v. Tikalsky, 213 N. W. 479, the Supreme Court of Wis-
consin says: "Here the language of the act is perfectly
plain,—the remainder of the fund is to be paid to the
estate of the deceased. Hence there is no room for the
application of rules of construction...... The whole
amount of the policy not having been paid to the bene-
ficiary, the estate of the deceased was augmented by
the present worth of future payments. When this sum
was paid to the administrator under the law, it must
be distributed to his heirs as of the date of his death."
See also, In re Fink's Est. (Wis.), 210 N. W. 834.
In re Ryan's Est., 222 N. Y. S., the surrogate (affirmed
by the Appellate Division of the Supreme Court, 222
N. Y. S. 891), says: "The payment to the estate was
made by the government without any condition or litiga-
tion whatsoever. The language of the federal statute
[citing the Act of 1925] is so clear and simple that no
interpretation could be adopted, other than that the words
'estate of the insured' mean that the fund is to be treated
as any other asset of an estate, and paid over to the

persons entitled under the New York law of intestacy."
In re Storum's Estate, 221 N. Y. S. 771, is to like im-
port. A similar construction is placed upon the statutes
in question, by the Supreme Court of Maryland, in
Deeble's Estate v. Tepper et al., 136 Atl. 536, by the Su-
preme Court of Texas, in Battaglia v. Battaglia, 290 S.
W. 296, and by the Supreme Court of Iowa in In re
Pivonka's Estate, 211 N. W. 246. While this question has
not heretofore been passed upon in this state by an ap-
pellate court it has by the Orphans' Court of Allegheny
County in Fix's Estate, 75 P. L. J. 585, and by the Or-
phans' Court of Erie County in Heard's Estate, 75 P.
L. J. 592; both of which reach conclusions in harmony
with that above stated. The only case holding to the
contrary seems to be that of Sutton's Exr. v. Barr's
Admr., 293 S. W. (Ky.) 1075. We are unable to follow
the reasoning of this last case. Any general scheme for
distribution of the insurance fund may sometimes prove
unfortunate. Passing it over to the estate of the dead
soldier, in the absence of a designated beneficiary, will
probably be found as satisfactory as any method that
could be devised. In any event, it is enough that Con-
gress has so provided.

The case of Salzer v. United States, 300 Fed. 764,
relied on by appellees, was decided in 1922 and cannot
be considered as authority under the Act of 1925.

The latter act was a carefully drawn statute; its
language is plain and the presumption is that Congress
expressed what it intended. It is an elementary rule
of statutory construction that a change of language
indicates a change of legislative intent; also that where
statutes conflict the later governs; hence as the Act of
1925 is inconsistent with prior statutes, it controls.
The later act being complete, we cannot read into it the
inconsistent language of prior legislation.

The distribution of the funds under these insurance
certificates is by a governmental agency and not through
the courts. When, however, the fund is transmitted to

the insured's estate, as here, without limitation, it passes under control of the proper state court and is distributable thereby. We cannot assume, with no suggestion to that effect, that Congress intended to impose upon the state courts the duty of distributing such fund to a certain class in exclusion of others. Our legislature would be powerless to make such designation, for under the state Constitution no special or local law can be passed, "changing the law of descent or succession": Section 7, article III, state Constitution. Waiving the question of the right of Congress to impose such duty upon state courts, it is sufficient to say it has not attempted to do so. When Congress desired the fund to be specifically appropriated, as in the case of escheat, it was not turned over to the insured's estate. So, had Congress intended the fund for a certain preferred class, we believe it would have provided that such disposition be made directly by a governmental agency.

Again, where a named beneficiary dies, after surviving the insured, it seems clear that the unmatured installments become a part of the latter's estate as of the date of his death, although the time when they will actually be received and the amount thereof is then uncertain. See In re Singer's Estate, supra; In re Storum's Estate, supra; Deeble's Estate, supra; In re Pivonka's Estate, supra. Being a part of the insured's estate and vesting as such at his death, it vests, in the absence of a testamentary disposition, in his then next of kin under the intestate laws. As a part of the insured's estate, however, it was subject to his testamentary disposition and by his will in the instant case vested in Margaret Joy Houston, sole legatee.

The decree of the orphans' court is reversed and the $6,931.20 in question is awarded Margaret Joy Houston, appellant; costs to be paid by her out of the fund.