## Neuburger's Estate.

The facts appear from the adjudication of

SINKLER, J., Auditing Judge.—Gilbert M. Neuburger died intestate on September 27, 1918, while serving in the United States Army. He left surviving his widow, Corrine S. Neuburger, a brother, Simon J. Neuburger, and two sisters, Jeannette N. Salsburg and Minnie Neuburger Honig. He left no issue. His life was insured under a policy of war risk insurance in the sum of $10,000, his wife, Corrine S. Neuburger, being designated as beneficiary. She received monthly instalments until her death on January 25, 1927. She was survived by a minor child, a daughter by a former marriage. By her will she appointed the Continental-Equitable Title & Trust Company and

Arthur Kaufman executors and named as the heir of her estate her daughter, a stepdaughter of our decedent. Upon the death of the widow, letters of administration were granted to Simon J. Neuburger on the estate of her husband, Gilbert M. Neuburger, whose estate is now before me for distribution. The balance due under the policy of war risk insurance amounting to $6640 was paid to the administrator, as well as other small amounts aggregating $56.32.

The administrator's account shows a balance for distribution of $5382.79. Adverse claims were made at the audit of the administrator's account, one on behalf of the two sisters and a brother of the decedent, and the other by the executors of the widow's estate. The questions involved were argued orally before me at the audit, briefs were filed in support of the contestants' claims, and after the audit supplemental briefs were filed on behalf of each.

Two questions are submitted for determination: (1) Is the estate to be distributed as of the date of death of the decedent or as of the date of death of the beneficiary? (2) If it is to be distributed as of the date of death of the decedent, is the widow's estate entitled to the $5000 allowance if the effect of such allowance will be a payment to a person not within the class designated by Congress as entitled to receive war risk insurance?

Upon the first question the decision of the Supreme Court of this state in Ogilvie's Estate, 291 Pa. 326, is conclusive. It was there held, in a case such as the present, that where the named beneficiary dies after surviving the insured, the unmatured instalments become a part of the estate of the insured as of the date of his death, although the time when they will actually be received and the amount thereof is uncertain.

As to the second question, numerous authorities have been submitted by counsel; the chief of these are Wanzel's Estate, 295 Pa. 419; Reivich v. United States, 25 F. (2d) 670; United States v. Woolen, 25 F. (2d) 673; Meisenhelter's Estate, 297 Pa. 292; Ogilvie's Estate, 291 Pa. 326; Schultz's Estate, 96 Pa. Superior Ct. 514, and Moore's Estate, 15 D. & C. 663.

It is not necessary to consider at length any of the foregoing decisions except the last three cited. The argument presented in behalf of the surviving sisters and brother of the decedent is to the effect that distribution to the widow's estate would result in the payment of the fund to her daughter, the stepdaughter of our decedent, which would effect a distribution to one who is not within the class designated by Congress entitled to receive war risk insurance. Under the provisions of the Act of Congress of March 4, 1925, 43 Stat. at L. 1302, 1308, section 511, the insurance is payable only to a spouse, child, grandchild, parent, brother, sister, uncle, aunt, nephew, niece, brother-in-law or sister-in-law. Undoubtedly the stepdaughter of the decedent does not come within this class. Under the principles of law set forth in the three latest cases, distribution of a part of the fund before me should be made to the executor of the widow's estate, even though ultimate enjoyment thereof will be by her daughter, who is not within the class indicated by the Act of Congress.

In Ogilvie's Estate, *supra*, the insured named his father as beneficiary in his policy of war risk insurance. The insured died in August, 1918, testate, and the monthly instalments were thereafter paid to his father until his death in September, 1920. Thereafter the accruing instalments were paid to the soldier's grandmother until her death in June, 1925. After her death the beneficiary named in the will of the soldier, who was not related to him but who was alleged to be his fiancee, obtained letters testamentary upon the estate of the deceased soldier. The Government paid to her as executrix the

balance of the insurance money, and at the audit of her account as executrix of the estate of the deceased soldier the fund was claimed by the soldier's next of kin. The Supreme Court held that the fund had been properly awarded to the executrix of his estate and was distributable in accordance with the terms of his will, although the distributee was not within the class designated by the Act of Congress.

In Schultz's Estate, *supra*, the decedent had a policy of war risk insurance upon his life in which his father was named as beneficiary. He died intestate. The father received payments during his lifetime, and upon his death the Government paid the balance to the administrator of the son's estate. It was held that the balance of the insurance was payable under the provisions of the Act of Congress above cited to the son's estate upon the death of the beneficiary, and that where the insured had died leaving such beneficiary as his sole heir under the intestate laws the beneficiary had a vested interest in the principal of the fund, which upon his death passed to his estate. The Superior Court found that the award of the balance of the fund to the beneficiary's administrator was proper.

The latest decision, Moore's Estate, *supra*, by Barnett, P. J., Orphans' Court of Perry County, is to the same effect.

These decisions leave no question as to the law upon this subject in this state as applicable to the present case. Upon the death of the insured, his widow as beneficiary and as one of his heirs under the intestate laws had a vested interest in her share of the fund, which upon her death was payable to his estate. Her share of his estate which she is entitled to receive under the intestate laws is, therefore, payable to the executor of her will.

*Bertram I. De Young*, for exceptants; *Ely J. Smith*, contra.

STEARNE, J., January 8, 1932.—When the Act of Congress of March 4, 1925, section 14, c. 553, 43 Stat. at L. 1302, 1310, became effective (amending the prior Acts of Congress of December 24, 1919, and June 7, 1924), upon the death of a World War soldier, an owner of a war risk insurance certificate, the value of all unpaid instalments thereunder, upon the death of the designated beneficiary, became payable to the estate of the insured soldier. The acts are very clear. They provide that when the soldier took out his insurance he was permitted, either in his lifetime or by his will, to designate, as beneficiaries, individuals within a "permitted class." Failing so to designate, or should his named beneficiary predecease the insured, or should the beneficiary survive, but die before receiving the full amount of insurance, then such fund or unpaid portion thereof is payable to the estate of the insured soldier.

The history of the congressional legislation and its effect was fully discussed by our Supreme Court in the leading case of Ogilvie's Estate, 291 Pa. 326.

The present decedent, a World War soldier, acquired such insurance certificate, named his wife as beneficiary, and died intestate, leaving to survive him as his next of kin a widow, one brother and two sisters. The monthly instalments due under the terms of the certificate were regularly paid to the widow until her death. The unpaid balance of the insurance was paid to the administrator of the husband's (soldier's) estate. Upon an accounting, the administrator of the then deceased widow claimed the widow's distributive share under the intestate law of the Commonwealth. The brother and sisters resisted this claim, asserting that under the intestate laws in force in Pennsylvania the person entitled to take from the estate of the soldier's widow (being a stepchild of the soldier) was not within the "permitted class" of

relatives of the soldier as defined by the acts of Congress, and was, therefore, excluded.

Ogilvie's Estate, *supra*, rules contrary to such contention. Mr. Justice Walling (at page 331) points out that the Act of 1925 changed the prior acts of 1919 and 1924, and that thereafter the next of kin of the soldier, or the beneficiaries under his will, are not rendered ineligible because they fail to qualify as relatives within the "permitted class" entitled to be designated as beneficiaries. See, also, Fix's Estate, 75 Pitts. L. J. 585.

Mr. Justice Walling, in Ogilvie's Estate, says (p. 333):

"When, however, the fund is transmitted to the insured's estate, as here, without limitation, it passes under control of the proper state court and is distributable thereby. We cannot assume, with no suggestion to that effect, that Congress intended to impose upon the state courts the duty of distributing such fund to a certain class in exclusion of others. Our legislature would be powerless to make such designation, for under the state Constitution no special or local law can be passed 'changing the law of descent or succession:' Section 7, Article III, state Constitution. Waiving the question of the right of Congress to impose such duty upon state courts, it is sufficient to say it has not attempted to do so. When Congress desired the fund to be specifically appropriated, as in the case of escheat, it was not turned over to the insured's estate. So, had Congress intended the fund for a certain preferred class, we believe it would have provided that such disposition be made directly by a governmental agency."

Various attempts have been made to subject such a fund in the hands of the personal representative of the soldier (a) to taxation (Wanzel's Estate, 295 Pa. 419); (b) as part of an estate subject to assignment (Fisher's Estate, 302 Pa. 516); (c) to pass it into the estate of the designated beneficiary instead of the estate of the deceased soldier (Meisenhelter's Estate, 297 Pa. 292), all of which have proven unsuccessful. What really happens is that the fund passes, through the estate, although not a part of it, to the persons or for the uses designated by the soldier in his will, or should the soldier die intestate, to his next of kin under the state intestate law.

Mr. Justice Kephart, in Fisher's Estate, *supra*, very accurately and concisely describes the mode of distribution, and reasons therefor, when the fund comes into the estate of such deceased soldier (p. 522):

"If we keep in mind the purpose and cause for the creation of war risk insurance we will better understand the subject. The primary object was to aid the soldier and his relatives within a limited class; it was given for a very small sum in recognition of services the soldiers were giving for their country. It might be called a bounty, donation, or a gift; it certainly did not possess the incidents of ordinary insurance. Though it was predicated on a contract, that feature will not obscure the real reasons for issuing war risk insurance. The right to change the contract (White *v.* United States et al., 270 U. S. 175) does not alter the original conception of the plan, nor affect the quality of the beneficence. Ogilvie's Est., supra, did not override this purpose or make the fund subject to taxes, debts and every conceivable vicissitude of an ordinary estate. The fund arising from war risk insurance is an earmarked fund that has impressed on it the quality given to it by the United States Government—the quality of a national donation, bounty, or gift for services in defense of the nation. The fund may be traced through the various agencies until it reaches its final destination in consummation of the original purpose for its creation. The badge of national obligation to a soldier protects it from liability for taxes, debts and the like; these attributes

control the instant case. There is nothing in Ogilvie's Est., supra, that decides otherwise.

"The 'estate' was employed by Congress as a conduit so that distribution could be made to the proper persons, or as a method of determining what relatives were to get the money and in order to place the distribution under a safeguard of state laws: Wanzel's Est., 295 Pa. 419; see Clement's Est., 160 Pa. 391. The gift was what its name implies, war risk insurance. Congress was not interested in setting up a fund for creditors and excisors. The estate may sue to recover it from the United States (United States v. Worley, 281 U. S. 339), but when recovered the fund is still marked with the same purpose that Congress intended it to have."

Counsel for exceptants relies largely upon an expression used in Wanzel's Estate, and quoted in the per curiam opinion in Meisenhelter's Estate, to the effect that ultimate distribution is limited to persons "within the permitted class of beneficiaries." In Wanzel's Estate the issue was one of taxation, while in Meisenhelter's Estate the contest was between the heirs of the soldier and the heirs of the beneficiary, where the former prevailed. In neither case was the present issue involved. In Ogilvie's Estate, the issue was squarely raised and decided contrary to the contention of exceptants.

In Schultz's Estate, 96 Pa. Superior Ct. 514, Judge Gawthrop wrote (p. 516):

"After a careful reading of the record and briefs we have concluded that the following extract from Judge Trimble's opinion so fully demonstrates the correctness of the decree that further discussion by us is unnecessary:

"'The question involved here is not new. In Ogilvie's Estate, 291 Pa. 326, it is found that an act of Congress passed in 1925 made a radical change in the distribution of war risk insurance. Under that act when beneficiaries are not designated by the insured the principal of the insurance fund is payable to a soldier's estate and in construing this act of Congress the Supreme Court said: "Where the named beneficiary in the certificate dies after surviving the soldier the unmatured installments become a part of the latter's estate as of the date of his death although the time when they will actually be received and the amount thereof is uncertain." It appears that Pete, the son, died before his father and the insurance fund under the act passed to the estate of the son after the father's death. This does not mean, as contended by counsel, that the father did not have a vested interest in the principal of the fund. The payments out of the principal were controlled by the Act of Congress which allows certain persons to be named as beneficiaries, but after these are all made the fund passed to the estate of the son as of the date of his death and the father having survived him takes his interest in the son's estate under the intestate laws of the State of Pennsylvania. The son could have changed all this if he had so desired. It was within his power to make a will and divert his estate to others than his father, but he did not do so.

"'The argument for the next of kin is that the only interest the father had was given to him as beneficiary and his interest therein did not extend beyond his own lifetime. We see no reason why the father could not have disposed of his interest which he received under the intestate laws of Pennsylvania by will at any time after the death of the son. If the son had designated another of the permitted class to receive the installments it would be difficult to conclude that the father never had any interest because he did not live long enough to come into possession. He survived his son and that is sufficient under the laws of Pennsylvania.' Being a part of the insured's estate and vesting as such at his death, it vests, in the absence of a testamentary dis-

position, in his then next of kin under the intestate laws. . . . (Ogilvie's Estate, supra)."

We are unanimously of opinion that upon the death of the designated beneficiary the fund in question, in the absence of a testamentary disposition by the soldier, passes through his estate (although not a part of it) to the soldier's next of kin under the intestate laws of the Commonwealth of Pennsylvania. This is what the Auditing Judge correctly ruled.

The exceptions are dismissed and the adjudication is confirmed absolutely.