### Romberger Estate

*Albert S. Readinger*, for appellant.

*Frederick J. Bertolet*, for Commonwealth.

MARX, P. J., April 1, 1950.—This issue arises on a petition on appeal from an additional appraisement by the Commonwealth for transfer tax, a citation thereon,

and an answer by the Commonwealth. Petitioner is the executor of the will of Ella I. Romberger, deceased, and the issue arose on the audit of the executor's account, and the award of the balance submitted by him for distribution.

Ella I. Romberger died on August 21, 1948. Earl E. Romberger, her husband, died on February 14, 1944, leaving a last will dated May 14, 1930, by which he gave all his property "of every kind and nature and wheresoever located at the time of (his) decease" to his wife. The will stipulated an alternative gift (ineffective), conditioned upon the event of his wife predeceasing. Letters testamentary were granted on March 16, 1944, to the widow. She filed an inventory and appraisement of the estate, on May 8, 1944, amounting to $2,304. Testator had served in World War I and held a war risk insurance certificate, naming her beneficiary, with a commuted value, at the time of her death, of $7,244.50. The commuted value was not included in the inventory of his estate.

The will of Ella I. Romberger, dated May 1, 1946, was probated, and letters testamentary were granted, on August 27, 1948, to L. H. Heist. By her will testatrix gave directions relating to the disposition of her remains; gave a pecuniary bequest of $2,500 to her sister-in-law, Helen Gardner; a bequest of $500 to her friend, Hannah Lyons; four bequests of $500 each to her uncles, Charles Styer, Wilson Styer, James Styer and Rev. G. W. Styer, with the testamentary provision that, in the event that any of those uncles predeceased her, the share of the one predeceasing revert to the residue of her estate. She gave a bequest of $500 to Mrs. Rose Snyder, and a pecuniary bequest of $500 to Robert B. Heist, son of the executor. Subject to these pecuniary bequests testatrix gave the residue of her estate, one half to Helen Gardner; one sixth to William

Reiser, nephew of her late husband; one sixth to Robert Kremp, nephew of her late husband; and one sixth to the Community General Hospital of Reading.

The executor of her will field an inventory and appraisement on December 13, 1948, showing a personal estate of $7,428.66. On March 12, 1949, the executor filed an amended inventory and appraisement, which included the aforesaid $7,428.66, and also included "U. S. Government Life Insurance Proceeds (War Risk Insurance), commuted·unpaid monthly installments $7,244.50".

On November 14, 1949, the appraiser for the Commonwealth filed an amended appraisement of "Additional Personalty", the commuted unpaid monthly installments of the war risk insurance, $7,244.50.

In his account the executor charged himself with the principal estate of $7,428.66. He included, as an additional debit, the commuted value of war risk insurance, $7,244.50. The account showed a principal balance due the estate of $3,549.99, exclusive of the item of $7,-244.50. The account also showed a balance of proceeds on sale of·real estate of $15,222.40, and a real estate income balance of $450.65. Under the recapitulation the war risk insurance item was again reported separately. The account was called for audit, after due notice by publication, and specific notice to the pecuniary legatees. An adjudication, with a decree of distribution, was confirmed nisi on October 15, 1949. In the absence of exceptions to the adjudication, or to the decree of distribution, the confirmation became absolute 10 days after October 15, 1949. Included in the adjudication and decree of distribution was the item of $7,-244.50, proceeds of the war risk insurance. The auditing judge found that the fund reached its final destination in the widow, the sole legatee of the deceased soldier, and subseqeuent transfers were subject to as-

sessments for taxes due the Commonwealth. On the authority of Ogilvie's Estate, 291 Pa. 326, and Fisher's Estate, 302 Pa. 516, he awarded the balance of $7,-244.50 to the residuary legatees under the will of this testatrix "subject to the payment of transfer taxes due and unpaid". There were no exceptions to, nor appeals from that disposition, and the executor submits that the awards were satisfied, less taxes withheld, excepting the award to the Community General Hospital.

On January 12, 1950, L. H. Heist, executor of the will of Ella I. Romberger, presented his petition averring, inter alia, that the proceeds of the commuted insurance were not included in the original inventory and appraisement filed, and that the attention of the inheritance tax appraiser, Charles Marks, was called to that omission; that subsequently, on March 12, 1949, "at the request and demand of the Bureau of War Risk Insurance", the executor included the commuted value in an amended or supplementary inventory and appraisement; that the executor was advised, by the appraiser, that he had submitted the question to the chief appraiser's office in Harrisburg, and was advised that war risk insurance was not taxable; that on November 14, 1949, a supplementary appraisement was made by the inheritance tax appraiser, for transfer tax purposes, and that he assessed the sum of $7,244.50 accordingly. The petition includes an appeal "from the act of the Register of Wills in assessing the tax as above set forth". The record contains no appeal, as required by section 31, Rule 1, Orphans' Court Rules. A citation was awarded "to show cause why the appeal of L. H. Heist, executor, from the appraisement for transfer inheritance tax purposes dated November 14, 1949, on the estate of Ella I. Romberger, deceased, at the rate of 10 percent should not be sustained and the appraisement and assessment declared null and void".

The Commonwealth alone answered, admitting paragraphs 1, 4, 5, 6 and 7 of the petition, and replying further as follows:

"2. Admitted. The respondent further avers that at the time that the fact that the War Risk Insurance was not included in the inventory was called to the attention of the Inheritance Tax Appraiser, Charles Marks, by the Executor, the Executor also stated to Charles Marks that in his opinion the said proceeds were not taxable and cited legal authorities to that effect in substantially the same fashion as later set out in 'Exhibit A' of the petition. Mr. Marks, thereupon, relying in part on the representations made by the Executor, did not include the proceeds in the original appraisement.

"3. Admitted. It is further averred that 'Exhibit A' was transmitted to Charles Marks, the Inheritance Tax Appraiser, and, relying in part on the statements and arguments contained therein, he refrained at that time from filing a Supplemental Appraisement.

"8. The allegations contained in Paragraph 8 of the petition argue legal conclusions and the respondent makes no answer thereto."

Appellant, as executor of the will of Ella I. Romberger, deceased, and the representatives of the Commonwealth of Pennsylvania carried on negotiations, prior to the filing of the original inventory and appraisement, regarding the necessity of including the commuted value of the war risk insurance, as an asset, in the executor's administration. The executor, satisfied that those proceeds were not an asset of the estate of testatrix, so advised the register of wills and the tax appraiser appearing in behalf of the Commonwealth. The Veterans Administration refused to pay the commuted value unless the proceeds be permitted to pass through an audit, an adjudication and a distribution as an asset of decedent, Ella I. Romberger. Thereupon

appellant, executor, filed a supplementary inventory and appraisement, including the proceeds of the commuted value of the certificate of insurance. It was filed on March 12, 1949; the prior inventory and appraisement on December 13, 1948. The supplementary appraisement by the Commonwealth's appraiser, was filed on November 14, 1949. Appellant refers to section 2 of the Act of June 24, 1939, P. L. 721: 72 PS §2384, which provides that:

"Whenever new assets are revealed or ascertained after the original appraisement is filed, or whenever revealed assets which are believed by the Department of Revenue to be taxable are not included in the original appraisement. as a result of a mistake of judgment or omission on the part of the appraiser, the appraiser, at the direction of the Department of Revenue, shall make and file a supplemental appraisement of such assets: Provided, That a supplemental appraisement made for the purpose of appraising assets that were revealed to the appraiser prior to the making of his original appraisement must be made within a period of one year from the date of the resident decedent's death . . ."

The supplemental appraisement having been filed more than one year after the death of testatrix, appellant contends the appraisement is void and cannot be made the basis of a decree of taxation against the beneficiaries under the will.

The executor of the will now appears as appellant, challenging the decree for payment of collateral transfer tax to the Commonwealth.

The executor whose account was audited and adjudicated is a fiduciary whose only interest was the liquidation of the estate, the submission of his administration for audit, and the carrying out of the decree of distribution. An executor or an administrator, as accountant, "has no standing to take an appeal unless he is sur-

charged or ordered to make distribution of an amount in excess of the amount admitted to be due the estate, because the statute . . . gives the right of appeal only to such parties as are 'aggrieved by the definitive sentence or decree of any orphans' court' '': Kennedy's Estate, 328 Pa. 193, 195; Sharp's Appeal, 3 Grant 260.

Section 3 of the Act of June 20, 1919, P. L. 521, as last amended by the Act of May 27, 1943, P. L. 757; 72 PS §2327, however, provides that:

. "Any person not satisfied with any appraisement of the property of a resident decedent may appeal, within sixty days, to the Orphans' Court on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court. The appeal shall specify all the objections to said appraisement, and any objections not specified in the appeal shall not be considered by the court. Upon such appeal, the court may determine all questions of valuation and of the liability of the appraised estate for such tax, subject to the right of appeal to the Supreme Court."

The case of Noel's Estate, 42 D. & C. 614, holds that:

"In the case of personal property, . . . the fiduciary is directly responsible under Sections 15 and 16 of the Act of June 20, 1919, P. L. 521, for the collection and payment of inheritance tax thereon . . . Where the appraisement is of personal property, it is not only the right but the duty of a fiduciary to appeal from an excessive appraisement, and where the appraisement is of real estate he has a similar duty if he has been given jurisdiction over the real estate."

By reason of the responsibility so imposed upon the fiduciary, he becomes an interested or aggrieved person, who has a right and duty to appeal from the appraisement, as well as from the assessment of the appraised asset, and the rate of taxation under the distribution.

The appeal of the fiduciary must, accordingly, be considered, and warrants the application of the above-recited Act of June 24, 1939.

It is apparent that the negotiations between the fiduciary and his counsel, on the one hand, and the official appraiser and the taxing authorities of the Commonwealth, on the other, began prior to or about the time of the filing of the original appraisement. The facts were then well known to both parties and, if an appraisement and assessment were to be applied to the additional asset, it became important that a supplementary appraisement, with the assessment of the property and the rate of transfer, be filed of record within the statutory period of one year after the death of testatrix. That was not done. At the audit on the executor's account, the single contention that was urged was whether the commuted payments were or were not subject to appraisement and assessment for tax. In our decision we found that the transfer was subject to tax. We did not consider the value of the asset, nor the rate of tax upon the transfers. In the decree of distribution we fixed no value and determined no rate. The validity of the assessment of November 14, 1949, was not considered. The asset was held in cash and an appraisement was not necessary. We, accordingly, decreed payment to those entitled as residuary legatees under the will of testatrix, subject "to the payment of transfer taxes due and unpaid".

The question on this appeal accordingly comes to this: Was the assessment, filed on November 14, 1949, effective, or was it ineffective by reason of having been filed more than one year after the death of the testatrix?

In the case of Heberton Estate, 351 Pa. 564, Judge Klein, of the Orphans' Court of Philadelphia, reviewing the history of transfer inheritance tax in this State, said:

". . . the courts have always held that the appraisement made by the appraisers must be considered as final and, in the absence of fraud, accident, or mistake, the only remedy for an erroneous exercise of judgment by the appraiser is an appeal in accordance with the provisions of the statute. A second appraisement to revise the judgment of the appraiser has always been regarded as a nullity and held to be without authority in law: . . .

"This firmly intrenched principle was changed by the Act of June 24, 1939, P. L. 721, which permits the filing of a second appraisement to include assets omitted from the first appraisement due to mistakes of judgment of the appraiser. This act cannot, however, have any application to the present case, because it provides that the supplemental appraisement must be made within one year from the date of the decedent's death."

In the instant case there is no allegation of fraud, accident, or mistake. There is no attempt to revise the judgment of the appraiser. The appeal rests entirely upon the fact that the appraisement and assessment was filed more than one year after the death of testatrix. At various times through that year negotiations occurred between the taxing authorities and the representatives of the fiduciary administering the estate. Differences of opinion existed. Subsequently, the representatives of the Commonwealth, concluding that a supplementary appraisement was needed, directed the preparation and filing of such appraisement and assessment. The preparation and filing were delayed beyond the year after the death of testatrix, with the result and effect that the act immediately was and remained a nullity.

In further support of our conclusion, reference is made to Ramsay Estates, 342 Pa. 103, and Darsie Estate, 354 Pa. 540.

And now, April 1, 1950, the appeal is sustained; the supplementary appraisement and assessment, filed November 14, 1949, is voided; costs to be paid out of the estate.