## Bosserman et al. v. Ettline

*Budding & Yost*, for plaintiffs.

*William W. Wogan*, for defendant.

SHERWOOD, P. J., December 8, 1952. — After the jury's verdict in favor of defendant, plaintiffs filed motions for a new trial and for judgment n. o. v. At the close of plaintiffs' testimony, defendant moved for

a compulsory nonsuit which was refused by the court, and subsequently filed a written point for binding instructions which was also refused by the court. Plaintiffs filed a written point for binding instructions which was also refused.

At the argument on the above motions before the court en banc, plaintiffs did not insist upon their motion for judgment n. o. v. but limited their argument to a motion for a new trial.

Plaintiff states in his brief supporting his motion for a new trial that he is relying primarily upon two grounds. First, that the court erred in taking judicial notice of the Ordinance of the City of York, York County, Pa., which is found in Code of Ordinances, York, Pa., chapter 18, sec. 32, which reads as follows:

"Use of a Coaster, Roller Skates and Similar Devices Restricted

"No person, on roller skates or riding in or by means of any coaster, toy vehicle or similar device, shall go upon any roadway, except while crossing a street on a crosswalk."

Plaintiff parenthetically cites section 33 of the same chapter which provides as follows:

"Clinging to motor vehicles. No person traveling upon any bicycle, motorcycle, coaster, sled, roller skates or any toy vehicle shall cling to, or attach himself or his vehicle to any other moving vehicle or street car upon any roadway."

Plaintiff contends that as in section 33 the city council specifically included the word "sled" and that in section 32 the word "sled" is omitted; that it is not the intention of the city council that section 32 applies to "sleds." As authority for this position, plaintiff cites the Statutory Construction Act of May 28, 1937, P. L. 1019, art. 3, sec. 33, 46 PS §533, which provides:

"Words and phrases shall be construed according to rules of grammar and according to their common

and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this Act, shall be construed according to such peculiar and appropriate meaning or definition.

"General words shall be construed to take their meanings and be restricted by preceding particular words."

Plaintiff therefore presents the following arguments: (1) That in section 32, page 18, in the city ordinance, the words "roller skates" are specific and everything that follows is general; (2) that the word "coaster" is doubtful and we must look to the words with it to determine its definition as therein used.

Both of these arguments raised by plaintiff in support of his first reason as ground for a new trial, can be answered together. Plaintiff assumes that the word "coaster" is a general term and consequently one that is doubtful as to the meaning intended to be ascribed to it by its use herein. Plaintiff specifically states in his brief as follows:

"It is also to be noted that the definition of the word coaster as set forth in standard dictionaries comprehends the use of some sort of vehicle which goes upon the water and rides up and down the coastline. Therefore, here again the word coaster as used in the ordinance must mean something other than it is defined in the standard dictionaries. Hence, it requires judicial interpretation, which interpretation must conform to the Statutory Construction Act."

It is defendant's position that the word "coaster" is defined by standard dictionaries as contemplating the sport of sleighing. In support of this position defendant cites:

1. Webster's New International Dictionary, second edition, published in 1950, which defines "coaster"

inter alia, as follows: "5 U.S. One who coasts on a sled or the like; A sled used for coasting."

2. The Winston Dictionary, college edition, published in 1942, defines "coaster" on page 183, as follows:

"4 One who slides on a sled; one who glides, as on a bicycle; 5, any of various toys on which children ride."

To support the above standard dictionary definitions of the word "coaster," the following cases have defined "coaster" and its associated words, as follows:

In Words and Phrases, volume 7A, page 79, the word "coast", inter alia, is defined as follows:

"The word 'coast' means to slide downhill upon snow or ice as on a sled; to ride, glide or move by or as by the force of gravity as on a bicycle without pedalling. 'Coasting' means the sport of sliding downhill on a sled or car or of riding a bicycle, as down a slope, without working the pedals; to slide on a sled down a hill or an incline covered with snow or ice; to descend a hill on a bicycle, removing the feet from the pedals; the sport of sliding on a sled down an incline covered with snow or ice. Samuelsohn vs. Starrill, 280 N. W., 596, 599, 225 Iowa, 421."

And on page 78, in defining "coasting" it says, inter alia:

" 'Coasting' in the common acceptance of the term, imports the movement of a sled or vehicle by momentum due to some previously exerted force or to the force of gravity . . . Tyne vs. B. F. Goodrich Co., 297 N. Y. S. 425, 428, 252 App. Div. 24."

In Hoff v. Ward Baking Company, 70 Pa. Superior Ct. 235, the court in the course of its opinion uses the term "coaster" as a synonym for the word "sled."

In Feldman v. Riccordino, 58 Pa. Superior Ct. 114, the court said:

"There was no Ordinance of the City forbidding the use of this street for coasting purposes, and the practice was not interfered with by the police authorities. There was in this case no evidence which would have warranted the court in declaring as matter of law that the character of the street and the highways which it crossed or into which it led was such as to render the practice of coasting in the locality dangerous and indulgence in the pastime negligence per se. Coasting upon a street which is not put to much public use, when not expressly prohibited by ordinance, is not necessarily a nuisance, nor is it an unlawful act, nor is it per se negligence."

Clearly, then, the above authorities should establish beyond any doubt that the word "coaster" in common parlance means "sled" and in a general sense includes propulsion of any vehicle by the force of gravity alone. The argument of plaintiff which deserves the most merit is his contention that in section 32 "roller skates" is a specific term; "coaster, toy vehicle or similar devices" are general terms and consequently under the Statutory Construction Act restricted by the words "roller skates."

To answer this argument defendant, in addition to denying that the word "coaster" is a general term but rather a specific term, presents the following reasoning:

Article 3, sec. 33, of the Statutory Construction Act of May 28, 1937, P. L. 1019, cited above, states inter alia:

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have a peculiar and appropriate meaning or are defined in this Act, shall be construed according to such peculiar and appropriate meaning or definition."

Certainly this very well known rule of construction should give rise to our construing the word "coaster" in accordance with its common and indeed even judicial meaning as set out above, i.e. "coaster" means sled. In addition, article 4, sec. 51, of the Statutory Construction Act cited above, 46 PS §551, states:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions."

If plaintiff's construction of section 32, ch. 18, of the Ordinance of the City of York is adopted, we are then faced with the conclusion that section 32 applies only to "roller skates," and that words "coaster," "toy vehicle," or "similar devices" are of no meaning or consequence. In other words, that only people on roller skates are denied the use of any roadway, except while crossing a street or a crosswalk. Certainly it was the intention of the Council of the City of York to include within the purview of the ordinance persons other than those on roller skates. Indeed, is it not more logical to assume that the city council in passing this ordinance contemplated the welfare of the children of our community? Council may well have had a double purpose for passing this ordinance; the first purpose being to protect people lawfully upon the streets from any person on the streets by means of roller skates, coasters or similar devices; and, secondly, for the purpose of protecting children from their own folly. It is a well-known fact that children do not confine themselves to using roller skates, but coast upon the streets by means of sleds. To protect children from the harmful incidents of their playing on the street, council without doubt intended that this ordinance should deny them the use of the streets.

It is also a well-known fact, and we take judicial knowledge of the same, that in appropriate winter

seasons certain hills in the city are earmarked and protected for the purpose of children's coasting thereon. In fact, Lehman Street hill, close to the scene of the accident giving rise to this case, was so set off. The accident arose only when minor plaintiff left the protection afforded while coasting on this hill and proceeded to coast on East King Street in violation of the city ordinance.

Plaintiff bases his main argument on the following wording of article 3, sec. 33, of the Statutory Construction Act, cited supra:

"General words shall be construed to take their meanings and be restricted by preceding particular words."

This language was intended to cover the situations that might arise in those certain instances, of which Marberger's Estate, 37 D. & C. 328, is an example. The court there was faced with the construction of section 310 of the Unemployment Compensation Law of December 5, 1936, P. L. 2897, 43 PS §790, which provided in part, as follows:

"In the event of any distribution of an employer's assets pursuant to an order of any court . . . including any receivership, assignment for benefit of creditors, adjudicated insolvency, composition, or similar proceeding, contributions or installments thereof, or interest thereon, then or thereafter due shall be paid in full prior to all other claims except taxes . . ."

On page 329, in the course of its opinion, the court said:

"No specific reference is made in the statute to the distribution of decedents' estates unless it comes within the words 'or other similar proceedings.' Under the Statutory Construction Act of May 28, 1937, P. L. 1019, however, general words shall be construed to take their meaning from and be restricted by preceding particular words. The words 'or other similar pro-

ceeding' must therefore relate to proceedings in the nature of receiverships or insolvency proceedings involving living debtors and would not be sufficiently broad to include distribution in decedents' estates."

This is the occasion when the legislature intended general words to be restricted by prior specific words and not as in this case where there is a word with a common and well-defined meaning being restricted by a prior specific word. In other words, in section 32, ch. 18, of the York City Ordinance, the specific words are not only "roller skates" but "coaster" as well, and "toy vehicle or similar device" are general words restricted not only by the prior specific words, "roller skate," but also by the prior specific word, "coaster."

Plaintiff cites Dixon's Case, 138 Pa. Superior Ct. 385, as authority for the following which he has taken from the court's opinion in this case: "A change of language indicates a change of legislative intent." As stated in the abstract, this is a sound principle of law. However, the Dixon case did not apply this principle to the situation with which we are now confronted. Rather, it was applied where a statute was later amended to increase the scope of its coverage. When a statute is amended, naturally the amendment per se shows a change of legislative intent. The court in the Dixon case, page 391, stated as follows:

" 'It is an elementary rule of statutory construction that a change of language indicates a change of legislative intent . . .' Ogilvie's Estate, 291 Pa. 326, 333, 139 A. 826. Thus, by the addition of the specific language in the 1939 amendment, taxing equitable interests, the legislature evidently considered it had not previously taxed such equitable ownership."

The court also states:

"Sec. 51, Art. IV, of the Statutory Construction Act, *supra* (46 PS §551) reads in part: 'When the words of a law are not explicit, the intention of the Legisla-

ture may be ascertained by considering, among other matters . . . (5) the former law . . .' "

Thus, the Dixon case stands as authority for the proposition that a change of language as evidenced by an amendment to an earlier statute is a change of legislative intent. It is not authority for the proposition that the use of the word "sled" in section 33 of the York Ordinance and the omission of the word "sled" in section 32 is a change of legislative intent. We, therefore, hold that the word "coaster," as used in the city ordinance, is not a general word but rather a specific word with a common and well-defined meaning; that it is not restricted by the words, "roller skate", and that upon all rules of statutory construction, and indeed common sense, the Council of the City of York intended for the protection of those lawfully upon the streets of our city and for the protection of our children who are unable to protect themselves. It seems apparent that York City Council certainly intended that children should not use toy vehicles of any nature on the public streets, whether the vehicle be a sled, a skate, a coaster, or any other type of vehicle that could be propelled on the street.

Based upon the above argument and principles of law set forth herein and upon the testimony produced in this case, we hold that the court did not err in its charge to the jury or its answers to points. It follows that coasting upon the public streets of the City of York is prohibited by the ordinance. See case of D'Ambrosio et al. v. Philadelphia, 354 Pa. 403.

There is another reason why a new trial should not be granted. After a careful reading of plaintiff's testimony and viewing it in the light most favorable to plaintiffs, together with all inferences arising therefrom, we are not convinced that plaintiffs have met the burden resting upon them of proving negligence as the proximate cause of the damages suffered by

plaintiffs and, therefore, the compulsory nonsuit moved for by defendant should have been granted and should not have been refused. It, therefore, follows that the motion for a new trial and for judgment n. o. v. should be overruled and refused.

And now, to wit, December 8, 1952, at 10 a.m., it is ordered, adjudged and decreed that the motions for a new trial and for judgment n. o. v., filed by plaintiffs November 17, 1951, are overruled and refused, and judgment is entered on the verdict in favor of defendant, Paul Ettline, and against plaintiffs, Donald Bosserman, a minor, by Lester L. Bosserman, his guardian, and Lester L. Bosserman in his own right, with costs of suit.