David S. Masland, M.D., H. Robert Davis, M.D., John J. Hanlon, M.D., and the Pennsylvania Medical Society, Plaintiffs *v.* Leonard Bachman, M.D., Secretary of Health of the Commonwealth of Pennsylvania, and the Department of Health of the Commonwealth of Pennsylvania, Defendants.

436

Argued February 3, 1976, before Judges CRUM-LISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Lewis S. Kunkel, Jr.,* with him *Fred Speaker, Thomas B. Schmidt, III,* and *Pepper, Hamilton & Scheetz,* for plaintiffs.

*Jay Alexander Gold,* Assistant Attorney General, with him *Jennifer A. Stiller,* Assistant Attorney General, *Jeffrey B. Schwartz,* Chief Counsel, and *Robert P. Kane,* Attorney General, for defendants.

OPINION BY JUDGE ROGERS, July 9, 1976:

The Analytical-Biochemical-Biological Laboratory Act, Act of September 26, 1951, P.L. 1539, *as amended,* 35 P.S. §2151 et seq., subjected to State regulation by the Department of Health of:

"[a]ny place, establishment or institution organized and operated primarily for the performance of all or any bacteriological, biochemical, microscopical, serological, or parasitological tests by the practical application of one or more of the fundamental sciences to material originating from the human body, by the use of specialized apparatus, equipment and methods, for the purpose of obtaining scientific data which may be used as an aid to ascertain the state of health.

"The term 'Department' means the Department of Health." Section 2, 35 P.S. §2152.

Section 13, 35 P.S. §2163, exempted from the operation of the Act a number of specified kinds of laboratories, including "a laboratory operated by a physician licensed to practice in this Commonwealth, provided such laboratory is operated solely in connection with the diagnosis and treatment of his own patients."

The Analytical-Biochemical-Biological Laboratory Act was extensively amended by the Act of December 6, 1972, P.L. 1388, 35 P.S. §2151 et seq. (Supp. 1975-1976). The name was changed to The Clinical Laboratory Act. A number of the exemptions provided in the earlier version of the Act were dropped in the amended version, including the exemption of laboratories of licensed physicians operated solely in connection with the diagnosis and treatment of patients.[1] However, the term Clinical Laboratory was defined in the amended version by words identical to those used to define Analytical-Biochemical-Biological Laboratory in the original.

By amendment to the original form of the Act made in 1962[2] and untouched by the 1972 amendments, the Department of Health was empowered to adopt rules and regulations "for the proper enforcement of the Act with regard to . . . other matters it may deem advisable for the protection of the public and for carrying out the provisions and purposes of this Act."

The subject of this lawsuit in our original jurisdiction is the following proposed regulations of the Department of Health, published at Vol. 5, Number 35, Page 2129 of the Pennsylvania Bulletin:

"§5.1.  Definitions.

"For the purpose of these regulations, the following definitions shall apply.

"(a)  'Clinical Laboratory':

"(1)  Any place, establishment or institution organized and operated primarily for the performance of all or any bacteriological, biochemical, *hematological,* microscopical, serological or parasitological *or other tests* by the practical application of one or more of

---

[1] 35 P.S. §2163 (Supp. 1975-1976).

[2] Act of August 4, 1961, P.L. 920, 35 P.S. §2161.1.

the fundamental sciences to material originating from the human body, by the use of specialized apparatus, equipment and methods, for the purpose of obtaining scientific data which may be used as an aid to ascertain the state of health. *This definition includes,* but is not limited to, all independent hospital, industrial, state, county and municipal laboratories and to *all clinical laboratories operated in private offices and clinics of practitioners of the healing arts.*

"(2) Provided, however, that the term 'Clinical Laboratory' shall not apply to the office or clinic of a licensed practitioner of the healing arts who performs only the following procedures as part of his or her examinations of the patient to obtain results which are essential for the immediate diagnosis and therapy of the patient:

"(i) Chemical examinations of urine by 'Dipstik' and/or tablet methods.

"(ii) Microscopic examinatoin of urine sediment.

"(iii) Pregnancy tests.

"(iv) Red and white blood cells counts.

"(v) Sedimentation rate of blood.

"(vi) Gram stain.

"(vii) Primary culturing for transmittal to a licensed laboratory including preincubation, if required.

"(viii) Qualitative chemical examination of stool specimens.

"(ix) Test for pinworms.

"(x) Test for Trichomonas vaginalis.

"This list may be revised by the Department in the event it is deemed advisable to add or eliminate specific procedures which either qualify or which no longer qualify as exempt items under the meaning and intent of this Section.

"Such procedures may be performed by the practitioners personally or with the aid of an assistant who need not be otherwise qualified.

"In the circumstances described in this provision, subsection (2), the practitioner shall not be required to obtain a permit before carrying out such laboratory work." (Emphasis supplied.)

It will be noted that the Department has added to the list of statutory tests the performance of which will constitute a Clinical Laboratory, the word "hematological" and the phrase "or other" [tests][3] and has further enlarged the statutory definition by explicitly including laboratories operated in private offices and clincs of practitioners of the healing arts.

The plaintiffs in this suit in our original jurisdiction are three licensed physicians and the Pennsylvania Medical Society suing in behalf of 13,444 members. The plaintiffs seek an injunction restraining the Secretary and the Department of Health from enforcing the proposed regulation with respect to places performing hematological tests and with respect to physicians' offices and clinics where tests are made for the diagnosis, treatment and care of patients. The defendants have filed a responsive answer. The parties, and we, agree that there are no issues of fact. Both parties have filed motions for summary judgment pursuant to Pa. R.C.P. No. 1035. The announced effective date of the questioned regulations has been suspended by stipulation pending the outcome of this litigation.

The plaintiffs assert that the questioned provisions are attempts by the defendants to amend The Clinical Laboratory Act under the guise of regulatory power

---

[3] Our discussion of the regulations regarding tests which follows was prepared prior to Saturday, February 28, 1976, when in Pennsylvania Bulletin Vol. 6, number 9, the Department of Health, without notice to this Court, published new proposed regulations which delete the words "hematological" and the phrase "or other" [tests] from the Department's definition.

and are therefore ineffective, citing *Firemen's Relief Association of Washington v. Minehart,* 430 Pa. 66, 241 A.2d 745 (1968) and *Commonwealth v. DiMeglio,* 385 Pa. 119, 122 A.2d 77 (1956). The defendants say that their addition of hematological tests to the definition was a mere redundancy since everything done in a hematological test is done in the tests named in the statute and that the parts of doctors' offices where tests are made are "place[s] . . . organized and operated primarily for the performance of . . . tests" and therefore within the Act's definition.

The rule making power vested in the Department of Health by this Statute is clearly interpretive, not legislative and the Department's regulators must depend for their validity not upon a law-making power but on whether they track the meaning of the Act. The Statute confers power to adopt regulations "for the proper enforcement of this Act," not to make rules to effectuate the Act's policies or purposes or to formulate policy. The subject matter is fully explained in *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 75-80, 313 A.2d 156, 168-171 (1973). We turn then to the areas of dispute.

As we have noted, the defendants have added "hematological" and the phrase "or other" to the list of tests, the performance of which by the Act's definition renders a place a regulated Clinical Laboratory. Does this make law or simply interpret the Act? The plaintiffs contend that the statutory definition enumerates with specificity the tests which the Legislature wanted to include, and that the defendants had no power to expand the list. The defendants say that any tests of blood or blood tissue, the object of hematological tests, would be included within the statutory listing of biochemical, miscroscopical and serological tests and that the word hematological is

a harmless redundancy. The question which immediately occurs is why, if any test called hematological is already described by other words in the Statute, the defendants believed it necessary to expand the definition? We are inclined to the beliefs that the Clinical Laboratory Act was written by the Legislature with the advice of experts in the appropriate sciences, that hematological tests were omitted from the Statute for a more substantial reason than that it was unnecessary to include them and that the Department, equally possessed of expertise, had more than a mere tautological reason for inserting them in its regulation. On the last point, we have difficulty in understanding so vigorous a defense of an unnecessary regulation.

If we are wrong in our conclusion, in view of the defendants' argument that hematological tests are now included by other names, there can be no harm in our enjoining the Department from enforcing this assertedly unnecessary addition to the Statute.

What we have said with respect to hematological tests would apply as well to such "other tests." We note that Section 12 of the Act, 35 P.S. §2162, provides for appeals and hearings before the Secretary by any person aggrieved by an action of the Department. If the Department feels that some test, under another name, falls within one of the described statutory tests, it may seek to enforce the Act as to such test subject to the right of the regulated to complain to the Secretary and, if still unrequited, to this Court for the review of the Department's action.

The plaintiffs also attack that portion of the regulations which specifically includes within the definition of clinical laboratories the "private offices and clinics of practitioners of the healing arts"—that is, doctors' offices. The plaintiffs say that since a Clinical Laboratory is defined as "any place, estab-

lishment or institution organized and operated primarily for the performance of . . . [enumerated] . . . tests" and since doctors' offices are not organized and operated primarily for the performance of tests but rather for the diagnosis and care of patients, doctors' offices are not within the definition of the Act. The plaintiffs of course contend that the Act is clear and unambiguous in this respect. The defendants, on the other hand, argue that that part of the doctor's office where tests are being carried out, however small, is a place organized and operated primarily for the performance of such tests. We agree with the defendants' argument because it is crucially supported by the fact that, although the definition of a Clinical Laboratory has remained the same since 1951, the exemption from its operation of doctors' offices was removed by the 1972 amendments. The defendants effectively invoke the principle that a change of language in subsequent enactments on the same subject matter indicates a change of legislative intent. *Haughey v. Dillon*, 379 Pa. 1, 108 A.2d 69 (1954); *Ogilvie's Estate,* 291 Pa. 326, 139 A. 826 (1927); *Nemitz v. Air Services International,* 7 Pa. Commonwealth Ct. 373, 298 A.2d 654 (1972). The question of why the Legislature originally specifically exempted doctors' offices, if it intended by its definition to exclude such places from regulation, has no convincing answer. The problem with the plaintiffs' thesis is compounded by the later amendment eliminating the exemption. We have concluded that the Legislature intended to include within the definition of regulated laboratories all places, including that portion of a doctor's office where the enumerated tests are performed; that it first exempted doctors' offices; and that it brought such places within the Act by removing the exemption. The regulations in

this respect are therefore consonant with the Act and should be upheld.

Judges WILKINSON and BLATT concur in this Opinion.

---

OPINION BY JUDGE MENCER, July 9, 1976:

I agree with the conclusion that the Department of Health's regulation, adding the word "hematological" and the phrase "or other" [tests] to the list of statutory tests, the performance of which will constitute a place a clinical laboratory, makes law rather than simply interprets the Act.[1]

I have no answer to the question of why the Legislature originally specifically exempted doctors' offices from the definition of a clinical laboratory if it intended by its definition to exclude such places from regulation. Nevertheless, I am convinced that doctors' offices are not organized and operated *primarily* for the performance of tests but rather for the diagnosis and care of patients and consequently are not within the controlling definition of the Act which defines a clinical laboratory as "any place, establishment or institution organized and operated primarily for the performance of all or any [enumerated] tests . . . ."

Judges CRUMLISH, JR. and KRAMER concur in this Opinion.

ORDER

PER CURIAM:

The opinions of Judges ROGERS and MENCER express the views of members of the Court.

The six judges who participated unanimously concluded that the inclusion of the word "hematological" and the phrase "or other" [tests] in the Department

---

[1] The Clinical Laboratory Act, Act of September 26, 1951, P.L. 1539, *as amended*, 35 P.S. §2151 et seq.

of Health's definition of Clinical Laboratory was beyond the Department's power. It is ordered, therefore, that the plaintiffs' motion for summary judgment in this regard be and it is granted, judgment in favor of the plaintiffs is entered and the defendants are enjoined from enforcing the Clinical Laboratory Act or its regulations based upon the inclusion of the mentioned word and phrase in said regulations.

The court is evenly divided on the issue of the lawfulness of the regulations relating to offices and clinics of practitioners of the healing arts, rendering it nonjusticiable. Since the plaintiffs may wish to appeal this issue to the Supreme Court of Pennsylvania, we hereby enter a final order dismissing the Complaint as it relates to this regulation.