## Commonwealth *v.* Gelfi, Appellant.

*Criminal law—Murder—Jury—Challenge—Conscientious scruples against death penalty—Examination on voir dire—Discretion of court.*

1. Where a question is asked a juror as to whether he has scruples against returning a verdict which would involve the death of the defendant, it is the effect of the question rather than its form that must be considered.

2. The test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence and this is to be determined by the discretion of the trial judge, based upon the juror's answers and demeanor.

3. A challenge of a juror for cause will be sustained, where he says on his voir dire that the evidence would have to satisfy him without any doubt at all, and that he would have to be absolutely sure that the man was guilty before he would return a first-degree verdict.

4. Nothing short of a palpable abuse of discretion justifies a reversal on a challenge for cause.

*Criminal law—Murder—Abusive remarks of counsel—Discretion—Certifying remarks on record.*

5. On a trial for murder, the trial judge is the best authority to state what alleged abusive remarks of counsel consist of, and his certification of them is conclusive in the appellate court, unless abuse of discretion is shown.

*Criminal law—Murder—Charge as to provocation—Weapon—Intent.*

6. To show provocation there must be sufficient cause and a state of rage or passion without time to cool, placing the prisoner beyond control of his reason, suddenly impelling him to act.

7. No words, mere gestures, or charges, however false or insulting, will free a man who kills another, from the guilt of murder.

8. Intent to take life may be presumed from the weapon used, and particularly so when it is shown that the weapon was fired six times.

Argued January 12, 1925.   Appeal, No. 19, March T., 1925, by defendant, from judgment of O. & T. Westmoreland Co., Nov. T., 1923, No. 271, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Angelo Gelfi.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Indictment for murder.   Before DOM, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which sentence was passed.

*Errors assigned* were various rulings and instructions, quoting record.

*Curtis H. Gregg,* with him *Philip K. Shanger* and *Harry E. Cope,* for appellant, cited: Hall v. Com., 22 W. N. C. 25; Com. v. Van Horn, 188 Pa. 143; Staup v. Com., 74 Pa. 458; Com. v. Myma, 278 Pa. 507; Com. v. Stallone, 281 Pa. 43.

*J. Edgar Murdock,* Assistant District Attorney, with him *Nevin A. Cort,* District Attorney, and *Robert W. Smith,* Special Assistant District Attorney, for appellee, cited: Com. v. Sushinskie, 242 Pa. 406; Com. v. Henderson, 242 Pa. 372; Com. v. De Palma, 268 Pa. 25; Kelly v. Ry., 270 Pa. 77; Com. v. Marcinko, 242 Pa. 388; Com. v. Webb, 252 Pa. 187.

OPINION BY MR. JUSTICE KEPHART, February 9, 1925:

Angelo Gelfi was convicted of murder of the first degree. It appears from the evidence that he killed his wife because she refused to permit him to enter the house. The defense was, a provocation sufficient to arouse the passion of an ordinary man beyond the power of control. This question was resolved against defendant. The evidence contains all the elements of first degree murder, and, unless there are trial errors, the conviction must be sustained.

The first assignment of error excepts to the action of the court in refusing to exclude the following question asked a proposed juror sworn on her voir dire: "If you were accepted as a juror in this case, and the evidence, as you would get it from the witness, and the law, as you would get it from the court, instructions from the court, would warrant your finding this defendant guilty of murder of the first degree, which would mean the death of this defendant, could you, and would you, return such verdict?" The question was objected to as being hypothetical, and as giving a comprehensive guess as to the juror's probable action, presupposing a case of murder in the first degree to exist.

It is the effect of the question rather than its form that must be considered, and, in substance, it inquired if the juror had conscientious scruples against capital punishment. The existence of this mental attitude was long ago held sufficient ground on which to base a challenge for cause. Com. v. Lesher, 17 S. & R. 155, is the leading case; it presents an earnest discussion on both sides, but the majority opinion has never been departed from. The law, in every case, is scrupulous to prevent even the possibility of undue bias; the slightest ground of prejudice on the part of the juror is sufficient. It need not be made out, its probability is enough. Says TOD, J., (p. 156): "Any one who, in any possible way, no matter how honestly, has been warped by any preconceived opinion which may affect his verdict, or has

made up his mind what verdict he is to give,.......is excluded. Nothing in the law can well be more extensive than this right of challenge propter affectum." The moment the fact of relationship, favor, enmity, prejudice, bias, preconceived opinion, scruple, or interest of a sufficient nature, is made out, it removes the juror; nothing further is necessary. The reasoning for the rule relative to the right to challenge for cause so as to obtain a fair and impartial jury is shown by the words of Lord Coke: "He that is of a jury, must be liber homo, that is, not only a freeman and not bond, but also one that hath such freedome of mind as he stands indifferent, as he stands unsworne." Co. Lit. 155 a. But it dates back to the statute of 3 Henry VIII, ch. 12. See Turner v. State, 128 Tenn. 27, 157 S. W. 67. It is a fundamental rule that a juror should approach the trial of a cause absolutely indifferent to the parties or the effect of his verdict. Scruples against capital punishment or opposition to the death penalty carried to the point of interference with the discharge of a juror's duty under the law has been recognized as a cause for the rejection of a proposed juror in all the states where crime is punishable by death. The rule early announced in this State was followed as late as Com. v. Minney, 216 Pa. 149, where this court sustained the Commonwealth's challenges, made because of "conscientious scruples" against capital punishment, citing the Lesher case.

The test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence, and this is to be determined by the discretion of the trial judge, based upon the juror's answers and demeanor: Com. v. Minney, supra, 150, 151; Com. v. Egan, 190 Pa. 10, 19. It is the same test which is applied to opinions as to guilt or innocence of the prisoner: Com. v. Taylor, 129 Pa. 534.

The state of the juror's mind on the death penalty could not be known except through interrogation, unless

voluntarily declared. The questions must necessarily be framed so as to ascertain that fact. Whether the juror was opposed to capital punishment was important for the Commonwealth to know. Illustrating the wisdom of the rule, out of the sixty-eight jurors examined, in the present case, twenty-one of them were actually challenged for cause by the Commonwealth because of their inability to render a verdict of murder in the first degree through conscientious objection to capital punishment. The first assignment of error is dismissed.

A juror, when examined on his voir dire stated that he required a very high order of proof from the Commonwealth before he would return a verdict of murder in the first degree. He said the evidence would have to satisfy him "without any doubt at all; [he] would have to be absolutely sure that man was guilty. There would have to be no doubt in [his] mind," before he could return the first degree verdict. The court sustained the challenge to this juror.

The method of filling a jury box is addressed to the trial judge, and much weight must be given his judgment in passing on its legality. The reason is manifest; the juror appears before him, he sees him and hears what is said, and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt and nervousness indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered. As it is not possible to bring these matters to our attention, the trial judge's view should be given great weight in determining the matters before him. Nothing short of a palpable abuse of discretion justifies a reversal in passing on a challenge for cause: Com. v. Henderson, 242 Pa. 372, 377; Com. v. Sushinskie, 242 Pa. 406, 413; Com. v. DePalma, 268 Pa. 25, 32. No such abuse appears in this case.

Appellant contends that the remarks of counsel in the course of the trial were prejudicial to him. He first complains that the language, certified by the court below, "I want the twelve intelligent jurors to understand, I think the objection is frivolous," did not express fully counsel's words. Under the authority of Com. v. Ezell, 212 Pa. 293, 296, this certification is conclusive on us, unless it appears the court below abused its discretion in directing their transcription in the record. The trial judge is the best authority to state what the alleged abusive remarks consist of, and whether harm was done defendant: Com. v. Henderson, 242 Pa. 372, 378. In the opinion overruling the motion for a new trial, the court stated there was "nothing in the nature of the remarks or the tone or the way it was uttered that would prejudice the defendant in any way." We agree with this conclusion.

The fourth and last assignment complains of a part of the charge of the court, where the trial judge, in expressing an opinion on the evidence, withdrew from the jury its right to find as a fact the existence of sufficient provocation. A judge, in the trial of a homicide case, may express his opinion on the weight and effect of evidence, to the extent of saying there is no evidence to reduce the crime to manslaughter, and, where there is ground to justify it, he may express an opinion, so long as he leaves the jury free to act: Com. v. Leesner, 274 Pa. 108, 114; Com. v. Myma, 278 Pa. 505, 510. Notwithstanding this expressed doubt as to whether the evidence sustained defendant's claim, the court submitted to the jury the question of sufficient provocation, though defendant had testified he was not angry.

To show provocation, we have held there must be sufficient cause and a state of rage or passion without time to cool, placing the prisoner beyond the control of his reason, suddenly impelling him to act. Sufficient provocation is incapable of exact definition, but no words, mere gestures or charges, however false or in-

sulting, will free a man killing another from the guilt of murder: Com. v. Newson, 277 Pa. 48, 50; Com. v. Colandro, 231 Pa. 343, 351. "No words of profanity, reproach or abuse or slight assault, are provocations sufficient to free the party": Com. v. Russogulo, 263 Pa. 93, 105.

Defendant shot his wife six times, four of the bullets passing through her body. The number and character of wounds inflicted on her person was sufficient to show the elements of murder of the first degree: Com. v. Straesser, 153 Pa. 451, 455. Intent to take life may be presumed from the weapon used. Particularly so when it is fired six times: Com. v. Eckerd, 174 Pa. 137, 149-150; Com. v. Cook, 166 Pa. 193, 196.

The facts thus proven constituted murder in the first degree. The jury having so found, and no error appearing in the record, it follows that the judgment of the court below must be affirmed.

Judgment affirmed, and it is directed that the record be remitted for the purpose of execution.