378 A.2d 1199

**COMMONWEALTH of Pennsylvania**

**v.**

**Bennie GARCIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1976.
Decided Oct. 7, 1977.

450

452

Stanton D. Levenson, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, John M. Tighe, Asst. Dist. Attys., Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

Appellant Bennie Garcia was arrested on March 1, 1974, and charged with murder and voluntary manslaughter. At trial, appellant requested a jury instruction on involuntary manslaughter. The court refused his request because (1) appellant had not been indicted for involuntary manslaughter, and (2) in the court's view the evidence of involuntary manslaughter was "at best meager and feeble." The jury returned a verdict of guilty of voluntary manslaughter and the court, after denying post-trial motions, imposed a sentence of five to ten years imprisonment. In this appeal,[1] appellant contends that the court erred in refusing his

---

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

requested instruction on involuntary manslaughter. We agree, reverse the judgment of sentence and remand for a new trial.[2]

## I

At approximately 8:30 p.m., February 2, 1974, appellant, his brother, and three friends visited a tavern several miles from appellant's home. They had never been to the tavern before and did not know any of the patrons. Appellant was carrying a pistol tucked under his belt when he entered the tavern.

At approximately 1:00 a.m., a fight broke out in the men's room between appellant's brother and several other patrons of the tavern. Appellant rushed towards the men's room. As he entered the doorway to the men's room, appellant was pushed back by the victim.

There is conflicting testimony concerning what happened next. The Commonwealth's witnesses testified that appellant drew his pistol and shot the victim while they were a few feet apart. Appellant testified that he went back into the men's room to look for his brother, and the victim grabbed him by the hair and yanked his head down. Appellant claimed that he was hit several times as he struggled to get free, and that the pistol fell out from under his belt. He testified that, while the victim still held him, he picked up the pistol and it accidentally discharged. Appellant stated that he did not intend to fire the pistol.

## II

■ The general rule in Pennsylvania is that on an indictment charging a particular offense the defendant may be convicted of a lesser offense which is included within the crime charged. *Commonwealth v. Soudani,* 398 Pa. 546, 547 n.1, 159 A.2d 687, 688 n.1 (per curiam), cert. denied, 364 U.S. 886, 81 S.Ct. 177, 5 L.Ed.2d 107 (1960); *Commonwealth v.*

---

**2.** Because we reverse for failure to instruct the jury on involuntary manslaughter, we do not address appellant's other assignment of error, that the Commonwealth improperly cross-examined a defense witness.

*Parker,* 146 Pa. 343, 344, 23 A. 323 (1892) (per curiam); *Commonwealth v. Lewis,* 140 Pa. 561, 21 A. 501 (1891); *Hunter v. Commonwealth,* 79 Pa. 503, 506 (1875) ("The general rule is well settled that upon an indictment charging a particular crime, the defendant may be convicted of a lesser offense included within it."); *Dinkey v. Commonwealth,* 17 Pa. 126, 129 (1851); accord, Fed.R.Crim.P. 31(c) ("The defendant may be found guilty of an offense necessarily included in the offense charged . . .").[2a] In our previous cases, however, this Court has not considered whether involuntary manslaughter is a lesser included offense of murder in determining whether involuntary manslaughter instructions should be given in a murder trial. See *Commonwealth v. Hoffman,* 439 Pa. 348, 357, 266 A.2d 726, 731 (1970); *Commonwealth v. Reid,* 432 Pa. 319, 322, 247 A.2d 783, 785 (1968); *Commonwealth v. Hardy,* 347 Pa. 551, 554, 32 A.2d 767, 768 (1943). Rather, these cases were predicated on a doctrine established in *Commonwealth v. Gable,* 7 Serg. & R. 423 (Pa.1821), that involuntary manslaughter is never a permissible verdict on a murder indictment.

In *Gable,* the defendant was indicted for murder, but the jury returned a verdict of "not guilty of murder but guilty

---

**2a.** In his dissenting opinion, Mr. Justice Nix contends that this doctrine, which allows the defendant to have the jury instructed on a lesser included offense, should be discarded as outmoded. We believe, however, that the lesser included offense doctrine helps promote the fairness of criminal trials. See part IV of this opinion, infra. Moreover, abandonment of the doctrine might pose constitutional difficulties:

"Indeed, while we have never explicitly held that the Due Process Clause of the [United States Constitution] guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the [statute before the Court] to preclude such an instruction would raise difficult constitutional questions."

*Keeble v. United States,* 412 U.S. 205, 213, 93 S.Ct. 1993, 1998, 36 L.Ed.2d 844 (1973). Because we conclude that the new Crimes Code, 18 Pa.C.S.A. §§ 101 et seq. (1973), contemplates the continued application of the lesser included offense doctrine, we need not decide whether the doctrine is constitutionally mandated. We simply conclude that the doctrine has continuing utility, and that the Crimes Code does not reflect a legislative intent to abolish it.

of manslaughter." On appeal, the defendant argued that the verdict was void for uncertainty because it did not specify whether he was guilty of voluntary manslaughter or involuntary manslaughter. This Court held that the verdict was not uncertain. After pointing out that murder is a felony and involuntary manslaughter is a misdemeanor, the Court reasoned:

> "[O]ne who is indicted for murder, cannot be convicted of involuntary manslaughter, because it is well settled, that there cannot be a conviction of a misdemeanor, on an indictment for felony. Therefore, when on an indictment for murder, the jury find that the defendant is guilty of manslaughter, it must be understood, such manslaughter as is felonious, which can be no other than voluntary manslaughter."

7 Serg. & R. at 424; accord, *Walters v. Commonwealth,* 44 Pa. 135 (1863).

The rationale of *Gable* was rejected in *Hunter v. Commonwealth,* 79 Pa. 503 (1875). In *Hunter,* the defendant was indicted for assault with intent to kill, a felony, but the jury found him guilty of assault, a misdemeanor. The defendant argued that he could not be convicted of a misdemeanor on a felony indictment. The Court rejected this contention, reasoning that the common law rule relied on in *Gable* was based upon the different procedures employed at common law in felony and misdemeanor trials. Since the difference had long since disappeared in Pennsylvania, the Court observed that "[i]t is clear that the reason of the rule has no application in this state." 79 Pa. at 505. The Court held "that the old common-law rule, that upon an indictment for a felony there can be no conviction for a misdemeanor, no longer exists in Pennsylvania." 79 Pa. at 509.

The Court inexplicably reverted to the doctrine that involuntary manslaughter was not a permissible verdict on a murder indictment, without rejecting or distinguishing *Hunter,* in *Hilands v. Commonwealth,* 114 Pa. 372, 6 A. 267

(1886).[3] After Hilands was acquitted of murder, he was indicted for involuntary manslaughter. On appeal from his conviction for involuntary manslaughter, this Court rejected Hiland's claim that the trial for involuntary manslaughter violated the double jeopardy clause:

"It is very evident [appellant] can never be tried again upon any charge of which he might have been convicted upon the first indictment. . . .

"But the protection extends no further than the offence charged in the first indictment, or of which might have been convicted under it. He was not in jeopardy for any other offence. The first indictment charged murder. Under it he might have been convicted of murder of the first or second degree, or of voluntary manslaughter, but not of involuntary manslaughter. The latter offence is a misdemeanor; it must be charged as such, and cannot be included in an indictment charging felonious homicide . . .. It follows that when [appellant] was put upon this trial for murder, he was placed in no jeopardy of a conviction for involuntary manslaughter."

114 Pa. at 380–81, 6 A. at 268.

Since *Hilands,* this Court has regularly held that involuntary manslaughter is not a permissible verdict on a murder indictment. See *Commonwealth v. Jackson,* 450 Pa. 417, 419 n.2, 299 A.2d 209, 210 n.2 (1973); *Commonwealth v. Hoffman,* 439 Pa. 348, 357, 266 A.2d 726, 731 (1970); *Commonwealth v. Reid,* 432 Pa. 319, 322, 247 A.2d 783, 785 (1968); *Commonwealth v. Edwards,* 431 Pa. 44, 52, 244 A.2d 683, 687 (1968); *Commonwealth v. Soudani,* 398 Pa. 546, 547 n.1, 159 A.2d 687, 688 n.1 (dictum), cert. denied, 364 U.S. 886, 81 S.Ct. 177, 5 L.Ed.2d 107 (1960); *Commonwealth v. Comber,* 374 Pa. 570, 573–74, 97 A.2d 343, 344 (1953) (dictum); *Common-*

---

**3.** *Hilands* has been limited to murder indictments. The rule announced in *Hunter* that a misdemeanor which is a lesser included offense is a permissible verdict on an indictment for a felony remained the general rule. See *Commonwealth v. Lewis,* 140 Pa. 561, 21 A. 501 (1891); *Commonwealth v. Shutte,* 130 Pa. 272, 18 A. 635 (1889). See generally *Commonwealth v. Soudani,* 398 Pa. 546, 547 n.1, 159 A.2d 687, 688 n.1 (dictum), cert. denied, 364 U.S. 886, 81 S.Ct. 177, 5 L.Ed.2d 107 (1960).

*wealth v. Palermo,* 368 Pa. 28, 31–32, 81 A.2d 540, 541–542 (1951); *Commonwealth v. Hardy,* 347 Pa. 551, 554, 32 A.2d 767, 768 (1943); *Commonwealth v. Mayberry,* 290 Pa. 195, 199, 138 A. 686, 688 (1927). But see *Commonwealth v. Jones,* 452 Pa. 569, 578, 308 A.2d 598, 604 (1973) (implying that involuntary manslaughter may be a permissible verdict if the facts presented by either side would support such a verdict); *Commonwealth v. Robinson,* 452 Pa. 316, 326, 305 A.2d 354, 359 (1973) (same). This Court never sought to justify the rule by analyzing whether involuntary manslaughter is a lesser included offense of murder. Some cases sought to support the rule by exhuming the corpse of the common law rule that a misdemeanor is not a permissible verdict on a felony indictment. See e. g., *Commonwealth v. Comber,* 374 Pa. 570, 580, 97 A.2d 343, 347 (1953) (dictum). Other cases simply restated the rule. Thus, this Court stated in *Commonwealth v. Palermo,* 368 Pa. 28, 31–32, 81 A.2d 540, 541 (1951): "It is still the law since *Commonwealth v. Gable,* 7 Serg. & R. 423 (1821) that . . . involuntary manslaughter which is a misdemeanor cannot be charged in an indictment with murder which is a felony."

The doctrine that involuntary manslaughter is not a permissible verdict on a murder indictment has been weakened by the adoption of Pa.R.Crim.P. 219(a), which became effective in 1965. Pa.R.Crim.P. 219(a) provides: "Where murder is alleged in an indictment, no other counts may be joined in the indictment except voluntary and involuntary manslaughter." Because involuntary manslaughter can now be charged in a murder indictment, it is questionable whether the doctrine established in *Commonwealth v. Gable,* 7 Serg. & R. 423 (Pa.1821), should still bar application of the lesser included offense doctrine when an involuntary manslaughter instruction is requested in a murder trial. But see *Commonwealth v. Reid,* 432 Pa. 319, 247 A.2d 783 (1968).

The continuing validity of the doctrine that involuntary manslaughter is not a permissible verdict on a murder indictment is also brought into question by our decision in *Commonwealth v. Moore,* 463 Pa. 317, 344 A.2d 850· (1975).

Moore was indicted for murder and voluntary manslaughter and, in a separate indictment, charged with involuntary manslaughter. Moore's petition to consolidate the indictments was denied, and the case was tried solely on the indictment for murder and voluntary manslaughter. At trial, Moore's request for a jury instruction on involuntary manslaughter was denied. On appeal, Mr. Justice (now Chief Justice) Eagen, speaking for himself and Mr. Justice O'Brien, stated that a motion to consolidate an involuntary manslaughter indictment must be granted when there is evidence to support an involuntary manslaughter verdict. Id. 463 Pa. at 320, 344 A.2d at 853 (plurality opinion) Mr. Justice Pomeroy, Mr. Justice Manderino, and this writer filed separate concurring opinions. Mr. Justice Pomeroy and Mr. Justice Manderino both agreed that the indictments should be consolidated); see *Commonwealth v. Stock,* 463 Pa. 547, 345 A.2d 654 (1975). The plurality reasoned that failure to consolidate the indictments was prejudicial error because it led to the refusal to instruct the jury on involuntary manslaughter. *Commonwealth v. Moore,* 463 Pa. at 322, 344 A.2d at 852–53 (plurality opinion of Eagen, J.); accord *Commonwealth v. Stock,* 463 Pa. 547, 551, 345 A.2d 654, 656 (plurality opinion of Eagen, J.); see *Commonwealth v. Thomas,* 403 Pa. 553, 170 A.2d 112 (1961). This writer and Mr. Justice Pomeroy stated that it would be error to refuse the instruction on involuntary manslaughter even if there had been no indictment for involuntary manslaughter. *Commonwealth v. Moore,* 463 Pa. at 323, 344 A.2d at 853 (concurring opinion of this writer); id. 463 Pa. at 336, 344 A.2d at 860 (concurring opinion of Pomeroy, J.).

■ Moore's trial was not governed by the new Crimes Code, 18 Pa.C.S.A. §§ 101 et seq. (1973). The Crimes Code has removed any validity the doctrine that involuntary manslaughter is not a permissible verdict on a murder indictment may have had after *Moore.* Under the Crimes Code, murder, voluntary manslaughter, and involuntary manslaughter are all classifications of a single offense—criminal

homicide. 18 Pa.C.S.A. § 2501.[4] The common law doctrine that involuntary manslaughter is not a permissible verdict on a murder indictment, based on the classification of murder as a felony and involuntary manslaughter as a misdemeanor, cannot stand in view of the classification made by the Crimes Code. The common law doctrine has no continuing validity.

Accordingly, the determination whether jury instructions on involuntary manslaughter should be given in a murder trial must be based on the classification made by the Crimes Code, and upon an examination of whether involuntary manslaughter is a lesser included offense of murder.

## III

Although a defendant generally may be convicted of an offense which is less than, but included within, the offense charged, there is no Pennsylvania statute, rule, or case which adequately sets forth the standards for determining what is a lesser included offense. In determining whether involuntary manslaughter is a lesser included offense of murder, we are guided by Section 1.07(4) of the American Law Institute's Model Penal Code. This section provides:

"A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when:

(a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) it consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or

(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the

4. This section provides:
"(a) Offense defined.—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.
(b) Classification.—Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter."

same person, property or public interest or a lesser kind of culpability suffices to establish its commission." [5]

Applying this standard, we determine that involuntary manslaughter is a lesser included offense of murder.

Under the Crimes Code, murder, voluntary manslaughter, and involuntary manslaughter are all classifications of the crime of criminal homicide. 18 Pa.C.S.A. § 2501 (1973) provides:

"Criminal Homicide

(a) Offense defined.—A person is guilty of criminal homicide if he intentionally,[6] knowingly,[7] recklessly [8] or

5. This section is based, in part, on the "basic premise . . . that it is desirable, where possible, to adjudicate the entire criminal liability of the defendant in a single trial . . . ." Model Penal Code § 1.08(4), Comment at 42 (Tent. Draft No. 5, 1965). We approved this concept in *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), on remand, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974); see 18 Pa.C.S.A. § 110 (1973).

6. "A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist."

18 Pa.C.S.A. § 302(b)(1) (1973).

7. "A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result."

Id. § 302(b)(2).

8. "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."

negligently [9] causes the death of another human being.

(b) Classification.—Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter."

■ The essential element necessary to sustain a murder conviction, which distinguishes murder from involuntary manslaughter,[10] is the state of mind of malice. See *Commonwealth v. Thompson,* 466 Pa. 15, 351 A.2d 280 (1976); *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975).[11]

Id. § 302(b)(3).

9. "A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation."

Id. § 302(b)(4).

10. Involuntary manslaughter is defined in id. § 2504:

"A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

11. Malice may be found if the homicide is committed with an intent to kill, with an intent to inflict serious bodily harm, or with reckless disregard of the likelihood of death or serious bodily harm manifesting extreme indifference for the value of human life. *Commonwealth v. Boyd,* 461 Pa. 17, 22–23, 334 A.2d 610, 613 (1975); *Commonwealth v. Coleman,* 455 Pa. 508, 510, 318 A.2d 716, 717 (1974). Malice may also be imputed where the homicide is committed in the perpetration of a felony. *Commonwealth v. Yuknavich,* 448 Pa. 502, 506, 295 A.2d 290, 292 (1972); *Commonwealth ex rel. Smith v. Myers,* 438 Pa. 218, 224–25, 261 A.2d 550, 553 (1970).

At the time of the killing in this case, murder was divided into two degrees: murder of the first degree included any "willful, deliberate, and premeditated" killing or any homicide committed in the perpetration of certain felonies, and murder of the second degree included "all other kinds of murder." Crimes Code, Act of December 6, 1972, P.L. 1482, § 1, formerly codified at 18 Pa.C.S.A. § 2502. The statute has since been amended. 18 Pa.C.S.A. § 2502 (Supp.1977). Murder is now divided into three degrees: murder of the first degree includes any "willful, deliberate and premeditated" murder; murder of the second degree includes killings which occur in the perpetration of certain felonies; and murder of the third degree includes "all other kinds of murder." Id.

■ Absent circumstances which would mitigate the offense to voluntary manslaughter[12] a criminal homicide is committed with malice if it is committed with an intent to kill. See *Commonwealth v. Butcher,* 451 Pa. 359, 364, 304 A.2d 150, 153 (1973). A criminal homicide constitutes involuntary manslaughter if it is committed recklessly or with gross negligence. 18 Pa.C.S.A. § 2504 (1973). Thus, when malice is based on an intent to kill, the recklessness or gross negligence which would support an involuntary manslaughter conviction constitutes a "lesser kind of culpability," Model Penal Code § 1.07(4)(c), than the malice necessary to support a murder conviction.

■ Malice may also be found if, in killing another, the defendant "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm . . . ." *Commonwealth v. Taylor,* 461 Pa. 557, 565–66, 337 A.2d 545, 549 (1975) (opinion of this writer, joined by Jones, C. J., and Eagen and Manderino, JJ.); accord *Commonwealth v. Boyd,* 461 Pa. 17, 22–23, 334 A.2d 610, 613 (1975).[13] The recklessness or criminal negligence necessary to support an involuntary manslaughter conviction may be found if the defendant consciously disregards or, in gross deviation from a standard of reasonable care, fails to perceive a substantial and unjustifiable risk that his action might cause death or serious bodily injury.

**12.** Voluntary manslaughter is defined in 18 Pa.C.S.A. § 2503 (1973):
"(a) General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
(1) the individual killed; or
(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
(b) Unreasonable belief killing justifiable.—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable."

**13.** See Model Penal Code § 210.2 ("criminal homicide constitutes murder when . . . it is committed recklessly under circumstances manifesting extreme indifference to the value of human life." ).

See 18 Pa.C.S.A. §§ 302(b)(3), 302(b)(4), 2504 (1973). It follows that when malice is based on the disregard of an extremely high risk of death or serious bodily harm involuntary manslaughter is a lesser included offense of murder in two respects. First, a "less serious . . . risk of injury . . . suffices to establish its commission." Model Penal Code § 1.07(4). The evidence may persuade the jury that the defendant is guilty of murder in all respects except that the risk disregarded was not extremely high, but that the risk was still unjustified and that therefore the killing constitutes involuntary manslaughter. Second, "a lesser kind of culpability suffices to establish its commission." Id. The evidence may persuade the jury that the defendant did not commit murder, because the defendant did not perceive the risk to others, but that the defendant should have perceived the risk to others, and therefore committed involuntary manslaughter. See Survey of Pennsylvania Law, 38 U.Pitt.L.Rev. 185, 263 n.92 (1976).

We are convinced, therefore, that the state of mind which suffices to establish the commission of involuntary manslaughter constitutes a lesser kind of culpability than the malice which is an essential element of murder.[14] We conclude that involuntary manslaughter is a lesser included offense of murder.

14. Under the Model Penal Code the intent to do serious bodily harm and the intent to commit a felony are not treated as categories of malice separate from the intent, knowledge or extreme recklessness that death might result. When the defendant's conduct involves an intent to do serious bodily injury, or an intent to commit a felony, this conduct is judged by the standard that a homicide committed with recklessness manifesting an extreme indifference to the value of human life is murder. Model Penal Code § 201.2, Comment at 32–33 (Tent. Draft No. 9, 1959). This section of the Model Penal Code has not been enacted in Pennsylvania. Nevertheless, we are convinced that the commission of a homicide with the intent to inflict serious bodily injury, or with the intent to commit a felony, ordinarily manifests reckless disregard for the value of human life. Therefore, we think it fair to say that the recklessness or gross negligence which suffices for the commission of involuntary manslaughter constitutes a lesser kind of culpability than the intent to do serious bodily injury, or the intent to commit a felony, which constitutes malice and would support a murder verdict.

■■■■ Moreover, an examination of the Crimes Code convinces us that whenever the evidence would support a verdict of murder or voluntary manslaughter, it is also sufficient to support a verdict of involuntary manslaughter. Murder and voluntary manslaughter are classifications of criminal homicide. 18 Pa.C.S.A. § 2501(b) (1973). A criminal homicide has been committed when a person "intentionally, knowingly, recklessly, or negligently causes the death of another human being." Id. § 2501(a). The Crimes Code also provides: "When the law provides that negligence suffices to establish an element of an offense, such element is also established if the person acts intentionally or knowingly." Id. § 302(e). Therefore involuntary manslaughter, which is defined as a killing committed in a reckless or grossly negligent manner, id. § 2504, also may be committed when a killing is committed intentionally or knowingly. Under the Crimes Code the categories of murder and voluntary manslaughter on the one hand, and involuntary manslaughter on the other, are not mutually exclusive categories. Because an intentional or knowing killing also establishes a negligent killing, all criminal homicides necessarily include involuntary manslaughter as a constituent offense.[15]

## IV

[11] Because involuntary manslaughter is a lesser included offense of murder, and because the evidence would support an involuntary manslaughter verdict whenever it would support a murder or voluntary manslaughter verdict, a defendant should be entitled to a requested instruction on involuntary manslaughter in all criminal homicide prosecutions. Allowing the jury to decide the case without ade-

**15.** 18 Pa.C.S.A. § 302(e) (1973) reflects a departure from prior law, which held that an intentional killing could not constitute involuntary manslaughter. In *Commonwealth v. Micuso*, 273 Pa. 474, 117 A. 211 (1922), this Court held that a shooting with intent to kill or wound was an intentional, not a negligent act, and therefore could not constitute involuntary manslaughter. Accord *Commonwealth v. Jones*, 452 Pa. 569, 308 A.2d 598 (1973); *Commonwealth v. Robinson*, 452 Pa. 316, 305 A.2d 354 (1973); *Commonwealth v. Flax*, 331 Pa. 145, 200 A. 632 (1938).

quate instruction as to the permissible verdict of involuntary manslaughter denies the jury information essential to a fair determination of the case. As Mr. Justice (now Chief Justice) Eagen has stated:

"In those instances where an involuntary manslaughter verdict would be supported by the evidence, the failure to so acquaint the jury prevents it from operating with full knowledge of the relevant law and precludes the defendant from having a fair trial."

*Commonwealth v. Moore*, 463 Pa. 317, 322, 344 A.2d 850, 853 (1975) (plurality opinion).

The need for an instruction on involuntary manslaughter also follows from the Commonwealth's burden of proof. The United States Constitution requires the Commonwealth to prove every element of the offense, including the degree of culpability, beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Thus, in any case in which the evidence would be sufficient to sustain a verdict of murder or voluntary manslaughter, the jury might conclude that the Commonwealth failed to meet its burden of proving malice, intent, or knowledge, but has . proven recklessness or negligence.

In order to avoid the possibility that the jury will erroneously convict the defendant of murder or voluntary manslaughter, when only involuntary manslaughter has been proven, a jury instruction on involuntary manslaughter must be given. It is no answer that if the evidence proves involuntary manslaughter only, and no instruction on involuntary manslaughter is given, the jury should acquit:

"True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must as a theoretical matter, return a verdict of acquittal. But the defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but

the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction."

*Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973) (emphasis in original); see *Commonwealth v. Thomas*, 403 Pa. 553, 170 A.2d 112 (1961). The jury should not be forced to choose between a murder or voluntary manslaughter verdict and an acquittal when, properly instructed, the jury would find the defendant guilty of involuntary manslaughter.

It has been argued that an instruction on involuntary manslaughter should not be given in a murder trial because it might confuse the jury. See *Commonwealth v. Nace*, 222 Pa.Super. 329, 331, 295 A.2d 87, 88 (1972) (dictum); cf. *Commonwealth v. Comber*, 374 Pa. 570, 578, 97 A.2d 343, 346–47 (1953) (assault and battery instruction, on a murder indictment, might confuse the jury). We are not convinced that an instruction on involuntary manslaughter presents a serious risk of confusing the jury. Indeed, in many cases, it will help to clarify the issues by giving the jury "full knowledge of the relevant law." *Commonwealth v. Moore*, 463 Pa. 317, 322, 344 A.2d 850, 853 (1975) (plurality opinion). The possibility of jury confusion in some cases is not an adequate ground to justify the unfairness of denying a requested instruction on involuntary manslaughter.

██ A conclusion that an involuntary manslaughter instruction would only confuse the jury is necessarily based on the assumption that, given the evidence presented in the case, it would be wrong to reach such a verdict. If the evidence proves involuntary manslaughter, and not voluntary manslaughter or murder, it cannot be said that it would confuse the jury to give an involuntary manslaughter instruction. But the issue whether the evidence proves involuntary manslaughter, and not voluntary manslaughter or murder, is for the jury to decide. It is the province of the jury to weigh the evidence, and the jury is entitled to believe all, part, or none of the evidence presented. *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976); *Commonwealth v. Rose*, 463 Pa. 264, 344 A.2d 824 (1975); *Commonwealth v. Wright*, 458 Pa. 236, 328 A.2d 514 (1974).

The jury's province to weigh the evidence includes the right to believe all, part of, or none of the testimony of a particular witness. *Commonwealth v. Marlin*, 452 Pa. 380, 305 A.2d 14 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972); *Commonwealth v. Petrisko*, 442 Pa. 575, 275 A.2d 46 (1971). Thus it is not grounds to deny an involuntary manslaughter instruction that the Commonwealth's evidence, if believed, would prove murder or manslaughter, and the defendant's testimony, if believed in its entirety, would require a verdict of not guilty. As Chief Judge Bazelon stated in *Broughman v. United States*, 124 U.S.App.D.C. 54, 55, 361 F.2d 71, 72 (1966) (footnote omitted), quoting *Young v. United States*, 114 U.S.App.D.C. 42, 43, 309 F.2d 662, 663 (1962) (emphasis in *Broughman*):

> "The fact that [the witness'] testimony raised an issue whether appellant was guilty of any crime at all is not inconsistent with appellant's claim that this same testimony raised an issue whether a lesser included offense had been committed. Nor would the jury have to credit all of [the witness'] testimony. In *Young v. United States*, we held: '. . . it would be permissible for the jury to totally disbelieve . . . [the witness] *or to believe that part which tended to exculpate appellant from an intent to [commit the greater offense.]*' "

The jury is not bound by any witness, or by any particular theory of the case.[16]

16. Because it is the sole province of the jury to evaluate the evidence, and the jury may reject all or any part of the evidence presented, we decline to follow section 107(5) of the Model Penal Code in determining whether involuntary manslaughter instructions should be given. The effect of § 107(5) would be to allow the court to refuse to charge the jury on involuntary manslaughter even though it is a permissible verdict.

Model Penal Code § 107(5) provides:
"The Court *shall not be obligated* to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."
(emphasis added). Model Penal Code § 107(4), on the other hand, which provides that a defendant may be convicted of a lesser included offense, does not require that the jury have a "rational basis" to acquit the defendant of the greater offense charged. Indeed, the

 Involuntary manslaughter is a lesser included of-fense of murder, and if the evidence is sufficient to allow the jury to consider a murder verdict it is sufficient to allow the jury to consider an involuntary manslaughter verdict. Neither the prosecution's theory of the case, nor the court's evaluation of the weight or credibility of the evidence, should deprive the jury of the information necessary to consider whether involuntary manslaughter has been committed. Therefore we hold that in every murder prosecution a defendant is entitled, upon request, to a jury instruction on involuntary manslaughter.

 At appellant's trial, his requested instruction on involuntary manslaughter was denied. Allowing the jury to decide this case without an instruction on involuntary manslaughter deprived appellant of a fair trial. Judgment of sentence reversed and a new trial granted.

JONES, former C. J., did not participate in the decision of this case.

POMEROY, J., filed a concurring opinion.

EAGEN, J., concurs in the result.

NIX, J., filed a dissenting opinion.

Commentary to section 107(5) makes clear that a conviction of a lesser included offense is permissible, even when there is no "rational basis" for acquitting the defendant of the greater offense. The words "shall not be obligated" were added to section 107(5) to give the trial judge discretion to charge on a lesser included offense, even when the court believes there is no "rational basis" for such a verdict. Model Penal Code § 107(5) Comment at 13 (Proposed Official Draft, 1962). A standard which gives the court discretion to refuse to charge the jury on a lesser included offense when, in the court's judgment, there is no "rational basis" for such a verdict, invites the court to weigh the evidence, and is inconsistent with the jury's power to believe all, part, or none of the Commonwealth's evidence. Simply because the evidence tends to prove the offense charged, not just the lesser included offense, the jury should not be deprived of the opportunity to decide that only the lesser included offense has been proven beyond a reasonable doubt.

470

POMEROY, Justice, concurring.

As fully set forth in *Commonwealth v. Polimeni*, 474 Pa. 430, 378 A.2d 1189 (1977) (opinion by Pomeroy, J., joined by Eagen, C. J., announcing the decision of the Court), decided this day, the Crimes Code [1] has made "[a]ll grades of unlawful killing lesser included offenses of the overall crime of criminal homicide." It was there stated that "because the legislature [in the Crimes Code] has classified both murder and involuntary manslaughter as subdivisions of the major offense of criminal homicide, a defendant who has been charged with murder is entitled on request to have the jury instructed on the elements of involuntary manslaughter at least where evidence is presented at his trial on which a verdict of that less serious offense could rationally be based." *Ibid.* 474 at 430, 378 A.2d at 1189.

In the case at bar, as in *Commonwealth v. Polimeni, supra,* and *Commonwealth v. Ford*, 472 Pa. 542, 372 A.2d 821 (1977), also decided this date, a jury could rationally have found the appellant guilty of involuntary manslaughter on the evidence presented; [2] thus I agree that the trial court should have granted appellant's request to have the jury instructed on involuntary manslaughter, and that a new trial is required because this was not done. I thus concur in the mandate of the plurality opinion. As in *Polimeni, supra,* and *Ford, supra,* however, there is here no need to reach, as the plurality does, the question whether a defendant being tried for murder is entitled on request to an involuntary manslaughter charge regardless of the evidence presented to the jury. As Mr. Justice Roberts stated in *Commonwealth v. Moore*, 463 Pa. 317, 328, 344 A.2d 850, 856 (1975), "[we] need not decide whether rationality should be a requirement for a permissible verdict, for in this case, a verdict of involuntary

1. 18 Pa.C.S. § 2501 *et seq.*

2. Garcia's testimony was essentially that his gun had accidentally discharged while he and the victim were engaged in a struggle. Similar evidence in *Commonwealth v. Ford*, 472 Pa. 542, 372 A.2d 821 (1977), and *Commonwealth v. Moore*, 463 Pa. 317, 344 A.2d 850 (1975) has been held sufficient to justify a verdict of guilty of involuntary manslaughter.

manslaughter would have been rational." (Concurring opinion of Roberts, J.) (footnote omitted). Moreover, no such broad claim is made by appellant, and the point was neither briefed nor argued by either party in this Court.

NIX, Justice, dissenting.

The issue raised in this appeal is whether an individual charged with murder and voluntary manslaughter has a *right* to have the jury consider the charge of involuntary manslaughter as a possible verdict. The majority concludes that a defendant should be entitled to a requested instruction on involuntary manslaughter in all criminal homicide prosecutions. Not only do I believe that the result reached is most unwise and will ultimately do a great disservice to the law of this jurisdiction, I am equally convinced that the reasoning employed by the majority to reach its conclusion is unsound. Hence this dissent.

This appeal provided a unique opportunity to reconsider, in light of our new penal code,[1] the troublesome problems of the permissible verdicts in a homicide prosecution. Rather than seizing upon this opportunity to consider the area afresh, the majority has persisted in attempting to incorporate a principle relied upon in the past which, in large measure, created the problems which we have been, up to this point, unsuccessfully struggling to resolve.

Specifically, I refer to the majority's reliance upon the lesser included offenses analysis for the basis of its determination as to whether or not a jury instruction, requested by the defense, must be given in a given case. While I do not wish to deprecate the utility of the general concept of lesser included offenses in some areas of the criminal law,[2] I do not believe the jurisprudence of this jurisdiction is advanced by

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1 et seq. as amended, 18 Pa.C.S. § 2501 et seq.

2. Certainly in the area of double penalty prohibitions, for example, such an analysis is most helpful. *See Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1976) (Dissenting Opinion of Nix, J., joined by Roberts J.); *Commonwealth ex rel. Moszczynski v. Ashe*, 343 Pa. 102, 21 A.2d 920 (1974).

attempting to analyze the question presently before us in such a framework. The legitimacy of this analysis, particularly as it has been applied to homicide cases, is at least suspect and its applicability in the past has proven troublesome.[3]

The first articulation of this concept by this Court appears in our decision in *Dinkey v. Commonwealth*, 17 Pa. 126, 129 (1851). There the Court was confronted with the question of successive prosecutions. The Court reasoned that since the accused, under an indictment for seduction might have been convicted of, and punished for fornication, he could not be subsequently tried for fornication after an acquittal under the seduction indictment. Thus, the Court sustained the plea of autrefois acquit and dismissed the indictment for fornication. It is interesting to note that this Court has since realized that the common law pleas of autrefois acquit and autrefois convict, both of these pleas being but a corollary of the lesser or constituent offense concept, was inadequate to protect Pennsylvania residents against successive prosecutions and under its supervisory power opted instead to embrace the "criminal episode" concept to determine when future prosecutions would be barred. *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, vacated and remanded, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44, 455 Pa. 622, 314 A.2d 854, cert. denied, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974).[4] It is ironic that although we had no hesitancy when recognizing that the changing times had rendered the lesser included offense concept inadequate for a resolution

3. The concurring opinion of Mr. Justice Pomeroy properly notes that the majority by applying the lesser included offenses concept has thereby given new life to the "some reasonable basis" controversy. The analysis suggested in this dissenting opinion would eliminate this vexing problem completely.

4. Nevertheless, defendants in this Commonwealth have been afforded a measure of protection against successive prosecutions by common law pleas of autrefois acquit and autrefois convict. These pleas prevent a prosecutor, after a conviction or acquittal of a "constituent" or lesser included offense in the first trial, for initiating a second prosecution for a greater offense. *Id.* 452 Pa. at 243, 244, 304 A.2d at 436 (Footnote omitted).

of the problems presented by the question of successive prosecutions, even though the doctrine was first relied upon in this Commonwealth in that context, the majority inexplicably refuses to depart from that doctrine in the consideration of the instant question.

The problems with the use of a lesser included offense analysis has been further exacerbated because the concept was not confined to offenses *necessarily included* in the greater.[5]

> "Both adultery and rape include the offence of fornication; it is necessarily involved in them: bastardy is not necessarily involved, *but it may be.*" *Commonwealth v. Lewis*, 140 Pa. 561, 564, 21 A. 501, 502 (1891) (Emphasis added).

This has been particularly true when applying the analysis to the law of homicides where the crimes have as a material element a particular result, i. e., the death of the victim. In approaching this area, our cases have treated the *unlawful killing* as the essence of all unlawful homicides and the *manner of its commission* merely as a circumstance.[6] Superimposing the lesser included offense rationale upon this

**5.** For a discussion of the problems in defining constituent offenses, *see generally*, D. Koenig, *The Many-Headed Hydra of Lesser Included Offenses: A Herculean Task for the Michigan Courts*, Vol. 1975 Detroit College of Law Review 41 (1975); B. George, *Lesser Included Offenses in Michigan*, Vol. 1975 Detroit College of Law Review 35 (1975); J. Barnett, *The Lesser-Included Offense Doctrine: A Present Day Analysis for Practitioners*, 5 Conn.L.Rev. 255 (1972); Note, *The Doctrine of Lesser Included Offenses in Kansas*, 15 Washburn L. Journal 40 (1976); Note, *Lesser Included Offenses: Application of Equal Standards to the Prosecution and Defense in Lesser Included Offense Situations*, 4 Toledo Law Review 273 (1973).

**6.** "It was reasoned that the offenses did not differ in *kind or nature* but only in degree—not in substance of the fact from murder, but only in the *ensuing circumstances*, a variance as to which did not hurt the verdict. *Salisbury's Case*, 1 Plow. 101 (1554); *MacKalley's Case*, 9 Co.Rep. 65, 67b (1611). The law has to the same effect been stated by Sir Mathew Hale and by Serjeant Hawkins in their respective Pleas of the Crown. 1 Hale's P.C. 449, 466; 2 Hawk. P.C. c. 47, § 4." *Commonwealth v. Jones*, 457 Pa. 563, 567, 319 A.2d 142, 145 (1974) (Opinion in Support of Affirmance). (Emphasis in original) (Footnotes omitted).

474

premise our cases mechanistically concluded that voluntary manslaughter was a lesser included offense of murder. *Commonwealth v. Kellyon*, 278 Pa. 59, 122 A. 166 (1923). This rationale which implicitly treats the distinction between a malicious killing and a non-malicious killing as being one of degree and not of kind is most difficult to reconcile with the many cases that have suggested the contrary:

> "Murder is an unlawful killing of another person with malice aforethought, express or implied: *Commonwealth v. Gooslin*, 410 Pa. [285, 189 A.2d 157], supra; *Commonwealth v. Carroll*, 412 Pa. [525, 194 A.2d 911], supra, and numerous cases cited therein; *Commonwealth v. Buzard*, 365 Pa. 511, 76 A.2d 394. *Malice express or implied is the hallmark, the criterion and the absolutely essential ingredient of murder.*" (emphasis added). *Commonwealth v. Kirkland*, 413 Pa. 48, 63–4, 195 A.2d 338, 345 (1963).

See also *Commonwealth v. Finnie*, 415 Pa. 166, 202 A.2d 85 (1964); *Commonwealth v. Carroll*, 412 Pa. 525, 194 A.2d 911 (1963); *Commonwealth v. Bolish*, 381 Pa. 500, 113 A.2d 464 (1955); *Commonwealth v. Kelly*, 333 Pa. 280, 4 A.2d 805 (1939); *Commonwealth v. Gibson*, 275 Pa. 338, 119 A. 403 (1923); *Commonwealth v. Drum*, 58 Pa. 9 (1868) ("The distinguishing criterion of murder is malice aforethought.").

Ignoring this inconsistency a more serious problem resulted because there are many instances where the facts of a case would justify a finding of murder but are at the same time devoid of the elements of provocation and passion sufficient to provide a "rational basis" for a voluntary manslaughter finding. While this would not have been an insoluble dilemma if we had been willing to confine the lesser included offense concept to those instances where the evidence did provide some basis for a finding of voluntary manslaughter, we failed to so restrict its application. To the contrary, the cases are legion which we have held that a conviction of manslaughter may be returned under a murder indictment even in the absence of provocation and passion if

the record supports a finding of murder.[7] *See Common-wealth v. Hill*, 444 Pa. 323, 281 A.2d 859 (1971); *Common-wealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970); *Com-monwealth v. Harry*, 437 Pa. 532, 264 A.2d 402 (1970); *Commonwealth v. Dennis*, 433 Pa. 525, 252 A.2d 671 (1969); *Commonwealth v. Cooney*, 431 Pa. 153, 244 A.2d 651 (1968); *Commonwealth v. Pavillard*, 421 Pa. 571, 220 A.2d 807 (1966); *Commonwealth v. Frazier*, 420 Pa. 209, 216 A.2d 337 (1966); *Commonwealth v. Frazier*, 411 Pa. 195, 191 A.2d 369 (1963); *Commonwealth v. Moore*, 398 Pa. 198, 157 A.2d 65 (1959); *Commonwealth v. Nelson*, 396 Pa. 359, 152 A.2d 913 (1959); *Commonwealth v. Steele*, 362 Pa. 427, 66 A.2d 825 (1949); *Commonwealth v. Arcuroso*, 283 Pa. 84, 128 A. 668 (1925); *Commonwealth v. Kellyon, supra.* An irreconcilable conflict was created when paralleled to the foregoing princi-ple a rule emerged which provided that a trial court could refuse to instruct the jury of its power to return a verdict of voluntary manslaughter in cases where there was no ration-al basis for such a finding.[8] *Commonwealth v. Pavillard, supra; Commonwealth v. Dews*, 429 Pa. 555, 239 A.2d 382 (1968); *Commonwealth v. LaRue*, 381 Pa. 113, 112 A.2d 362 (1955); *Commonwealth v. Flax*, 331 Pa. 145, 200 A. 632 (1938); *Commonwealth v. Gelfi*, 282 Pa. 434, 128 A. 77 (1925); *Commonwealth v. Morrison*, 266 Pa. 223, 109 A. 878 (1920); *Commonwealth v. Russogulo*, 263 Pa. 93, 106 A. 180 (1919); *Commonwealth v. Sutton*, 205 Pa. 605, 55 A. 781

**7.** This position was inspired by the reluctance of courts to surrender the opportunity to punish the accused for the lesser charge in the event that the jury failed to return a verdict of guilty for the greater offense. *See e. g., Commonwealth v. Frazier*, 420 Pa. 209, 213–14, 216 A.2d 337, 338–339 (1966).

**8.** In *Commonwealth v. Jones, supra*, recognizing the maze of incon-sistencies and contradictions that had developed over the years and attempting to avoid a departure from precedent that would have created an intolerable disruption in our system, I expressed willing-ness to accept prospectively the position that an instruction for voluntary manslaughter be given whenever requested by the defense regardless of the existence of a rational basis to support such a verdict. I reached this decision not because this approach, in my judgment, was best for our system of jurisprudence but rather because it provided the most effective method of harmonizing those decisions that were then controlling.

(1903); *Clark v. Commonwealth*, 123 Pa. 555, 16 A. 795 (1889).

Even though we are faced today with the question as to when a requested charge as to involuntary manslaughter must be given, I have dealt at great length with the historical development of this problem as it related to voluntary manslaughter because I believe that it is instructive of the pitfalls that lie ahead if we insist upon viewing this question as one that must be resolved in the framework of the lesser included offense rationale. In the past, as the majority has noted, our courts declined to use the lesser included offense analysis in determining an accused's right to an instruction for involuntary manslaughter. While I agree with the majority that the rule relied upon for rejection of the lesser included offense analysis has very little legitimacy in our law today, I nevertheless believe that the majority is in error when it recognizes the inappropriateness of one doctrine but is willing to accept another rationale equally as inappropriate. It is my basic thesis that the question presented is fundamentally one of practice and that we are not at this juncture bound by any constitutional or statutory restrictions in determining the approach that would most enhance the law of this Commonwealth.[9] Having been freed from the strictures of the past by virtue of the enactment of the 1972 Code, it is my view that our responsibility should be to fashion the most desirable rule consistent with our concept of the respective roles of the court, prosecutor and jury, keeping in mind our judgment as to what is fair from the standpoint of the accused.

**9.** The United States Supreme Court has never expressly held that the Constitution guarantees the accused the right to have his jury instructed on a possible lesser included offense. *Keeble v. United States*, 412 U.S. 205 (1973). Absent a rule which was vulnerable to discriminatory or arbitrary application, *see, e. g., Keeble v. United States, supra*; *United States ex rel. Matthews v. Johnson*, 503 F.2d 339 (3rd Cir. 1974), I fail to perceive any basis for premising such a constitutional right. In fact the United States Supreme Court has recognized that the lesser included offense doctrine developed at common law as an aid to the prosecution in instances where their evidence failed and not as a safeguard to protect the accused. *Keeble v. United States, supra*, 412 U.S. at 208, 93 S.Ct. 1993.

The majority suggests that the fact that the crimes code has set forth the generic crime of criminal homicide, 18 Pa.C.S.A. § 2501 (Supp. 1977–78), should be interpreted as an indication of a legislative intent to make involuntary manslaughter a permissible verdict in a murder prosecution. This fact, at best, is a neutral one since the new code also defines the various types of homicide, 18 Pa.C.S.A. §§ 2502, 2503, 2504 (Supp. 1977–78). To the contrary, there are factors which would suggest that the legislature did not intend to require a jury in a murder prosecution to consider all of the types of unlawful killings as a possible verdict.

First, under the 1939 Penal Code [10] § 4701 expressly provided that the jury should decide the degree of murder.[11] Conspicuously absent in the present code is any comparable language with regard either to murder, voluntary manslaughter or involuntary manslaughter. It is a fundamental rule of statutory construction that a change in language of a subsequent statute on the same subject may suggest a change in legislative intent. *Haughey v. Dillon*, 379 Pa. 1, 108 A.2d 69 (1954); *Sekel v. Iagenemma*, 170 Pa.Super. 621, 90 A.2d 587 (1952); *Masland v. Bachman*, 25 Pa.Cmwlth. 435, 361 A.2d 473 (1976); *Nemitz v. Air Services International*, 7 Pa.Cmwlth. 373, 298 A.2d 654 (1972). The omission of language similar to that used in § 4701 is a strong indication that the legislature, in enacting the new code, did not intend to require that a defendant should be permitted to have the jury consider all of the types of homicide in every murder prosecution.

10. 1939, June 24, P.L. 872, § 101 et seq., 18 P.S. § 4101 et seq.

11. § 4701 provided in pertinent part:
"The jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether the person is guilty of murder of the first or second degree."
Thus, under the 1939 Code, *supra,* there was no question that the legislature conferred upon the accused the absolute right to have a finder of fact determine the degree of murder. Subsequent case law extended this right to voluntary manslaughter. *See Commonwealth v. Jones, supra.*

Secondly, whereas the new crimes code does not provide a statute of limitation in murder prosecutions it does require that a prosecution for involuntary manslaughter must be commenced within two years after it is committed, 18 Pa.C.S.A. § 108 (Supp.1977–78). This is further indicative of the legislature's recognition that there would be instances where a murder prosecution could be initiated yet the accused would be immune from prosecution for involuntary manslaughter. It is therefore clear, at least in those instances, that the legislature did not intend to confer upon the accused the substantive right to provide the jury with the option of returning an involuntary manslaughter verdict.

I am satisfied that there is no legislative mandate requiring the result reached by the majority. We therefore must now consider the wisdom of imposing such a procedural rule under our supervisory powers. Pa.Const., art. V, § 10. I do not share the belief that the encouragement of compromise verdicts provides a salutary effect upon our jurisprudence.[12] Further, I believe the fear that jurors will be reluctant to discharge their responsibilities with fidelity to be exaggerated. I reject the majority's view that failure to instruct the jury as to the elements of involuntary manslaughter might contribute to the possibility of an erroneous conviction of the higher grade of the offense. As I stated in my dissent in *Commonwealth v. Moore*, 463 Pa. 317, 340, 344 A.2d 850, 862 (1975):

"I have a serious question as to the validity of the majority's implicit assumption that the additional instructions to the jury as to the elements of involuntary manslaughter, while they are laboring under the onerous task of attempting to absorb the difficult distinctions between the other grades of homicide, will provide the jurors with an

12. The adoption of the position that the jury no longer has mercy-dispensing powers would bring the law of homicide into conformity with the axiomatic principle of criminal law that mitigating factors should be of concern only at sentencing. A contrary view, in my judgment, erases the legislatively created distinctions between the grades of homicide and substitutes the visceral reaction of the jury. Without a clear legislative direction such a substitution is an unwarranted perversion by this Court of legislative power.

understanding of 'the full significance of the law of homicide in Pennsylvania.' It is more likely to make comprehension impossible." (footnote omitted).

The charging decision is properly a prosecutorial function. *See Commonwealth ex rel. Davis v. Reid,* 338 Pa. 351, 12 A.2d 909 (1940); A.B.A. Standards on The Prosecution Function, §§ 3.5, 3.9 and Commentaries (approved draft 1971). *See generally, Commonwealth ex rel. Specter v. Martin,* 426 Pa. 102, 232 A.2d 729 (1967); *Commonwealth ex rel. Specter v. Bauer,* 437 Pa. 37, 261 A.2d 573 (1970). The prosecutor's awareness of the strengths and the weaknesses of his case places him in the best possible position to assess whether a jury would be likely to reject a verdict of the higher grade of homicide under a given set of facts. I, therefore, suggest that the appropriate rule would be to give the option to the district attorney of charging all of the grades of criminal homicide or to permit him to select the specific charge or charges he deems appropriate under the evidence he intends to present.[13] In the event that he chooses the latter course and the jury sees fit to acquit the accused, then under this Court's decision in *Commonwealth v. Campana, supra,* subsequent prosecution for the offenses not initially charged, would be barred.[14] Additionally, this approach would encourage responsible charging by the prosecutor and deter the "boiler-plate" charging of accused.

13. Consistent with my view that the 1972 Code has disavowed the former concept of the jury's mercy-dispensing power, it follows that we should no longer sustain a challenge of the sufficiency of the evidence to support a verdict of one grade of homicide, where there was no basis in the evidence to support a finding of that grade of homicide, solely upon the grounds that the evidence, if believed, would justify a finding of a higher grade of that offense. By such an approach, whatever *questionable* benefit the prosecution may derive from an election to charge all of the grades of criminal homicide is negated. Thus, a verdict of voluntary manslaughter on the record that is devoid of evidence of provocation and passion should not be sustained simply because there was testimony which might have supported a verdict of murder.

14. I would confine the holding in *Commonwealth v. Moore,* 463 Pa. 317, 344 A.2d 850 (1975), and *Commonwealth v. Stock,* 463 Pa. 547, 345 A.2d 654 (1975) to those prosecutions arising under the 1939 Penal Code.

Accordingly, in the instant case, it is my view that the trial court did not err in denying the requested instruction for involuntary manslaughter and I would therefore affirm the judgment of sentence.